YOUNG and OTIS *against* COVELL.

THIS was an action on the case. The declaration contained six counts. The first count stated that the plaintiffs were, on the 17th of *April*, 1806, joint owners of the one half of the sloop *Alert.* *Young* lived in *Troy*, and *Otis* in *New-York.* One *Davis*, of *Rhode-Island*, applied to *Young*, at *Troy*, to purchase the half of the sloop, belonging to the plaintiffs, and offered to

To maintain an action, as for a *deceit*, on a parol representation as to the credit and responsibility of a third person, the defendant *Plff*: must prove actual fraud in the plaintiff, or an *Deft* intention in the defendant to de-

his false representations. *Deceit* is the *gist* of the action; and though the advice given be rash and indiscreet, yet if there is no ground to infer an intent to deceive, it will not support the action.

pay 800 dollars, on the sale and delivery of the sloop, and 700 dollars, on a credit; and *Young* being ignorant of the circumstances and credit of *Davis*, or whether he might be safely trusted, at the instance of *Davis*, applied to the defendant, being a merchant in *Troy*, for information as to the credit, character, and circumstances of *Davis*, and requested the defendant to inform him truly as to the credit, &c. of *Davis*; and the defendant, fraudulently intending to deceive the plaintiffs, and to induce them to sell and deliver the moiety of the said sloop to the said *Davis*, did, on the said 17th of *April*, 1806, at, &c. falsely, knowingly, fraudulently, and deceitfully, represent to the said *Young*, that the plaintiffs might trust the said *Davis* with perfect safety; that the defendant had no doubt of the credit of *Davis*, and if *Davis* wanted 5,000 dollars, the defendant would let him have that sum; that the plaintiffs confiding in the representation of the defendant, sold and delivered to *Davis*, the one moiety of the sloop for 800 dollars in cash, and 700 dollars, one half thereof to be paid in 90 days, and the other half in six months. The plaintiff averred, that the defendant, at the time he made the representation to *Young*, knew that *Davis* could not be safely trusted, &c. and that *Davis* has not paid the 700 dollars, and was, and is, wholly unable to pay the said sum, or any part thereof, to the plaintiff. The other counts were to the same effect. The defendant pleaded not guilty.

At the trial, before Mr. Justice *Van Ness*, at the *Rensselaer* circuit, in *June*, 1810, the plaintiffs proved that they were the owners of the one half of the sloop *Alert*, and the conversation between *Young* and *Davis* as to the purchase and sale, at which the defendant was present, and very highly recommended *Davis*, saying, that if *Davis* wanted 5,000 dollars, he, the defendant, would let him have it in a minute. But the witness did not know whether the defendant had been sent for, or was present by accident. The sale was concluded on the

terms stated. The defendant said he knew the father and father-in-law of *Davis*, and all their connections, and that they were all abundantly able. A few days after the sale, within one week, and while the sloop still lay at the dock in *Troy*, the defendant told the plaintiffs that *Davis* was a rascal, and not worth a cent, and that if the plaintiffs wished to secure themselves, they must do it then; and the sloop continued at *Troy*, two or three days after this information. It appeared also that the plaintiffs refused to trust *Davis*, until he procured some person to vouch for his responsibility. There was no evidence that the defendant knew *Davis*, or had ever seen him before he came to *Troy*, in a vessel from *Rhode-Island*. The defendant was a man of good credit, a next-door neighbour of the plaintiffs, and on friendly terms with them. The father and father-in-law of *Davis* were persons in good circumstances; but *Davis* himself was a bankrupt.

A motion was made for a nonsuit, and the judge ruled, that the evidence was insufficient to sustain the action, and nonsuited the plaintiffs; on which a bill of exceptions was tendered, which was sealed by the judge, and returned to this court, pursuant to the act of the 30th of *March*, 1809, (32 sess. c. 186. s. 5.)

A motion was made to set aside the nonsuit, which was argued by

*Foot*, for the plaintiffs; and

*Bliss*, for the defendant.

*Per Curiam.* It is well settled that this action cannot be sustained without proving actual fraud in the defendant, or an intention to deceive the plaintiff, by false representations. The simple fact of misrepresentation, unconnected with a fraudulent design, is not sufficient. The evidence produced by the plaintiffs at the trial did

NEW-YORK,
May, 1811.

not make out the fraud, or show enough to justify the jury in drawing that conclusion. The defendant made no suppression of facts within his knowledge. He stated correctly the circumstances of the connections of *Davis* in *Rhode-Island*. He lived on friendly terms with the plaintiffs; he gave them prompt and seasonable notice of his subsequent opinion of the insolvency of *Davis;* and it did not appear that he had any connection with *Davis,* or that he came and voluntarily recommended him to the plaintiffs. The advice was rash and indiscreet; but there is no ground from which to infer that it was deceitful. *Deceit* is the *gist* of the action. If the cause had gone to the jury, the testimony would not have warranted a verdict for the plaintiffs, and the motion to set aside the nonsuit ought therefore to be denied.

Motion denied.(*a*)

(*a*) See *Ward* v. *Center,* 3 Johns. Rep. 271. *Upton* v. *Vail,* (6 Johns. Rep. 181.) 3 Term Rep. 51. 2 East, 92. 3 Bos. & Pull. 367.