ORLEANS,          WILLIAM SMITH *vs.* GEORGE IDE.
*March,*
1830.
It is not required by the statute for the prevention of frauds and perjuries, that the con-
sideration of a written promise to answer for the debt, default, or miscarriage of a
third person, shall appear in writing.

This was an action of *assumpsit*, and the declaration contained
several counts setting forth in substance—That on the 28th day of
March, 1828, one Avara Gilman contracted to purchase of the
plaintiff a pair of horses at the price of $200, on a credit of sixty
days ; the plaintiff to have Gilman's note and the guarantee of
some other responsible person—That the note was accordingly
executed and delivered, but the delivery of the horses was not to
be made, nor the sale to take effect, until the guarantee was furnish-
ed—That Gilman thereupon applied to the defendant to give the
guarantee required, at the same time apprizing him of all the facts
of the case and the reason why the horses had not been delivered
—That in compliance with the application, the defendant execu-

ORLEANS,
March,
1831.

Smith
vs.
Ide

ted and put into Gilman's hands the following written undertaking, addressed to the plaintiff :—" *Mr. William Smith*, Sir. Avara " Gilman says he has bought a pair of horses of you for two hun- " dred dollars in sixty days. I will warrant him to pay according " to his agreement.

*George Ide.*"

" Marshfield, March 29th, 1828."
—That Gilman immediately brought this writing to the plaintiff, who on the receipt of it consummated the sale by delivering the horses to Gilman—And alleging a failure of payment according to the terms of Gilman's note and the defendant's engagement.

On the trial of the cause upon the general issue in the county court, the defendant objected to the admission of parole evidence to show the consideration of his undertaking, and contended that the proof, if admitted, could not entitle the plaintiff to recover; for that by the statute of frauds the consideration of the promise, as well as the promise itself, must be evidenced by writing. These objections were overruled, and the evidence was admitted. The defendant then proved that Gilman continued solvent and able to pay this debt till about the last of June, 1828, and that no demand of payment was made on Gilman, or notice given to the defendant, till July 1, 1828, when Gilman had failed.

A verdict and judgement having passed for the plaintiff, the defendant filed exceptions to the decision, which now came on for a hearing before this Court.

*Smith and Peck, in support of the exceptions.*—This case is clearly within the statute of frauds and perjuries. Gilman gave his note to the plaintiff for the horses, payable in sixty days, the payment of which the defendant guarantied to be made when due. This guarantee was collateral to the promise of Gilman, who continued liable upon his note, and therefore falls directly within the statute.—*Phil. Ev.* 344–5 ; 2 *T. R.* 50, ; 1 *H. Bl.* 120 ; 8 *Johns.* 37 ; 1 *Sw. Dig.* 348.

The guarantee was not admissible in evidence, no consideration appearing on the face of the agreement for the defendant's promise. Before the statute of frauds and perjuries, a promise to pay the debt of another, or to answer for his default, would not bind the party promising, without a consideration.—1 *Saund.* 211, *n.* 2. Therefore, since the passage of the statute, the consideration for such a promise, as well as the promise itself, must be in writing, as the consideration forms an integral part of the agreement.—

5 *East*, 10 ; 6 *Ib.* 307 ; 7 *Ib.* 348; *Shep. T.* 85 ; *Fell on M. G.* 318 ; 4 *B. and A.* 595 ; *B. and B.* 14 ; 3 *Bing.* 107 ; 1 *Phil. Ev.* 335–6, 440 ; *Sugd. L. V.* 48 ; *Chit. Con.* 209 ; 3 *Dal.* 415 ; 5 *Cranch*, 142, 151 ; 3 *Johns.* 210 ; 2 *N. Hamp. Rep.* 414 ; 1 *Peters' Rep.* 476, 501. The construction of the statute here contended for is strongly supported by the fact, that our statute of frauds and perjuries, which is a transcript of the 29 *Ch. II.* was not passed till 1822, when this construction had for a long time been notoriously approved and settled in England. And the same course of decisions had been followed by the Supreme Court of the United States, in the cases from 3 *Dallas* and 5 *Cranch*, above cited. When English Statutes, such, for instance, as the statute of frauds and perjuries, and the statute of limitations, have been adopted into our legislation, the known and settled construction of these statutes by English courts of law, has been considered as silently incorporated into our acts, or has been received with all the weight of authority.—2 *Peters' Rep.* 18, 20–1 ; 2 *Day*, 325 ; *Sudg. L. V.* 48, (*note.*) The statute was passed to prevent frauds and perjuries, and to effect this object, it seems as necessary that the consideration should be in writing, as that the promise should be.

No available consideration appears on the face of the guarantee. The only apparent consideration is past and executed, and no other or different one can be raised by implication. But an after made promise is not good, except it be moved by a precedent request. And when there is a precedent request by A for B to deliver C goods, and a subsequent agreement in writing by A to pay B for the goods, the request, being part of the consideration, must appear on the face of the agreement, and parole evidence is not admissible to show it.—*Fell M. G.* 318. Here is nothing in the writing which has the semblance of a request for the delivery of the horses ; for by the language used, it is to be understood that the trade was completed and the horses delivered.

It follows as a necessary consequence of the principle, that the consideration for the agreement must be in writing, that no parole evidence can be admitted to show a consideration. In some of the cases to be cited against us on this point, a sufficient consideration appeared in the writing, so that a decision as to the admissibility of parole evidence was unnecessary ; and as to all of them it may be said, that they are opposed to the law of England.

The writing admitted in evidence is the contract on which the defendant is sought to be charged, and not the evidence of the

ORLEANS,
March,
1831.

Smith
vs.
Ide.

contract. If then it is imperfect, wants mutuality, or a considera-
tion, it is void, and ought not to have been helped by parole.
Even independent of the statute of frauds, if a contract is reduced
to writing, and no consideration appears upon the face of it, none
can be shown by parole evidence.—4 *Cranch,* 224 ; 11 *Mass.*
27 ; 3 *Bing.* 107. The evidence in this instance went not mere-
ly to supply a consideration to the written contract, but to con-
tradict that which appeared in the writing ; for the evidence
showed the consideration to consist in the delivery of the horses
to Gilman, whereas the apparent consideration was the previous
sale. This is directly opposed to the rule, that if one consideration
appears in a deed or contract, no other can be shown.—3 *Stark.*
*Ev.* 1003-4 ; 1 *Johns.* 139 ; 7 *Ib.* 341 ; *Dyer,* 146 ; 4 *Co.* 3 ;
1 *Ves.* 128 ; 1 *Phil. Ev.* 424.

It is the settled doctrine of the common law, that parole evi-
dence cannot be admitted to vary or alter the terms of a written
contract. This rule applies as well to the consideration as to any other
part of the contract, and the evidence admitted in this case had
most evidently this tendency.—5 *Co.* 26 ; 5 *T. R.* 567 ; 1 *H.*
*Bl.* 659 ; 4 *Dal.* 341 ; 1 *Ib.* 83 ; 1 *Mass.* 69 ; 8 *Ib.* 146 ; 11
*Ib.* 27 ; 2 *Stark. Ev.* 84 ; 2 *N. Hamp. Rep.* 289 ; 2 *B. and A.*
573 ; 2 *Con. Rep.* 404 ; 18 *Johns.* 451.

In order to charge the defendant upon his contract, a demand
of payment should have been made on Gilman, and immediate
notice of nonpayment given to the defendant.—2 *Taunt.* 206.
At all events, the demand and notice should not have been delay-
ed an unreasonable time, until Gilman had failed, and the defen-
dant became exposed to suffer in consequence of the plaintiff's
negligence.—8 *East,* 242 ; 6 *Esp. Rep.* 89 ; 1 *B. and C.* 10 ;
3 *Wheat.* 154 ; 3 *M. and S.* 326.

*Upham, contra.*—It is insisted that the defendant's underta-
king was original and not within the statute of frauds. The dis-
tinction is between a promise to pay the debt of another, which
has already been contracted, and an undertaking which is simul-
taneous with that of the principal contracting party, and forms a
part of the original transaction. In one case the statute applies,
in the other, it does not.—12 *Mass.* 297 ; 3 *Esp. Rep.* 86.

In this case the plaintiff had a lien upon the horses for the
price, and the parting with that lien, on the strength of the defen-
dant's promise, by the delivery of the horses to Gilman, was a new
and distinct consideration, which made the promise original, and

took it out of the statute.—1 *Esp. Rep.* 121 ; *3 Bur.* 1886 ; 1 *B. and P.* 158.

It is said, if A promise to pay B *if C does not*, A is but surety ; while if A promise that *C shall pay*, he is principal.   But a promise to *pay* and to *see paid* are all one.—*Fell M. G.* 36–7–8.

It is also contended that the writing imports a sufficient consideration upon the face of it.   If a person writes his name on the back of a note, or gives a memorandum at the foot of it, engaging to see it paid, this is a sufficient promise in writing within the statute, and needs no other consideration than that which passes between the principal contracting parties.—12 *Mass.* 137 ; *Chit. Con.* 210 ; 7 *Mass.* 233 ; 8 *Johns.* 29 ; 11 *Johns.* 221 ; 13 *Johns.* 175 ; 9 *East,* 348 ; 1 *Peters' Rep.* 476 ; 2 *B. and P.* 238 ; 4 *Ib.* 258 ; 2 *N. Hamp. Rep.* 413 ; 7 *C. L. Rep.* 414.

But we further insist, that the consideration of an agreement to answer for the debt of another is not, in this country, required by the statute of frauds and perjuries to be in writing ; it may be proved by parole evidence.—5 *Mass.* 358 ;  1 *Sw. Dig.* 238 ; 17 *Mass.* 122 ; 4 *Pick.* 385 ; 6 *Con. Rep.* 81 ; 8 *Johns.* 29 ; 11 *Ib.* 221 ; 1 *Peters' Rep.* 176.   It is true, the court of K. B. in A. D. 1804, in the case of *Wain* vs. *Walters*, rejected, for the first time, the popular signification of the word " agreement," and gave to it a technical meaning, by reason of which the statute of frauds received a new construction.   And many subsequent English cases have followed that decision, and given to the term " agreement" the same technical definition.   But the American cases to which I have referred sufficiently show, that such construction is not received with approbation in this country.   The statute does not require the whole agreement to be set down in form : it is sufficient if there be a *note* or *memorandum* of it in writing ; that is, so much of it as is obligatory upon the party to be charged therewith.

The doctrine of the *law merchant*, in regard to demand and notice, does not apply to this case.   The defendant does not stand in the situation of an endorser of a promissory note, and consequently was not entitled to immediate notice of the neglect of Gilman to pay.—6 *Con. Rep.* 315 ; 2 *Aik.* 106.

The objection to the parole evidence, because it went to contradict the written contract, is without foundation.

ROYCE, J. delivered the opinion of the Court.—Several questions are made in the argument of this case.   1.  Whether the un-

dertaking of the defendant is to be considered as an original engagement, or as collateral to that of Gilman, and so within the statute of frauds and perjuries.   2. If within the statute, whether the writing discloses a sufficient consideration to sustain the promise.   3. If it does not, whether the promise is ineffectual and void, either at common law or under the statute, because the consideration is not in writing.   And lastly, if the promise was binding, whether the defendant is discharged for want of a seasonable demand and notice.

The rules for determining, when an undertaking in relation to the debt or liability of a third person, or from which he derives a benefit, is within the statute, have, by a long succession of judicial determinations, become, for the most part, well settled and sufficiently intelligible.   Of these rules, the one most material to be noticed may be stated in the following terms :—If the entire benefit of a contract enures to A ; as if he receives the property which is purchased on credit of B, then any undertaking of C for the payment is within the statute, provided A becomes at all liable to B for the price as a purchaser : but if the credit is given to C exclusively, he in effect becomes the purchaser, and his engagement for the price is not within the statute ; though the purchase is intended for the benefit of A to whom the property is delivered.— 6 *Mod.* 249 ; 2 *T. R.* 80 ; 1 *H. Bl.* 120 ; 1 *B. and P.* 158 ; 17 *Johns.* 114.   In applying this principle to the present case, we have no occasion to enter into the nice distinctions which have been sometimes taken, as to the party to be regarded as the principal or direct contractor to whom credit was given.   Here the purchase of the horses was made solely by Gilman, he became the direct debtor for the price, and his note is still in force against him. Therefore, the undertaking of the defendant was clearly a collateral engagement, and directly within the statute.

It has not been pretended that this writing discloses the true consideration on which it was given; which was the subsequent completion of the sale and delivery of the horses to Gilman.   The language used would have been equally applicable to a sale which had been consummated ten days before.   And in truth the writing does not import any certain consideration whatever.   For any thing there disclosed, it might have consisted in a premium advanced by Gilman or the plaintiff, in a stipulated benefit to Gilman, or in some detriment to be incurred, or advantage forborne, by the plaintiff; or the defendant might have acted without any inducement which the law would recognize as a consideration.

ORLEANS,
March,
1831.

Smith
vs.
Ide.

ORLEANS,
March,
1831.

Smith
vs.
Ide.

The question then arises, had the plaintiff a right to show the consideration of this written promise by parole evidence ? I am not prepared to admit the position taken by the defendant's counsel, that at common law a promise reduced to writing must express the consideration on which it is founded.  It is supported by a *dictum* of Best, Ch. J. in *Morlay* vs. *Boothby*, 3 *Bing*. 107, but seems to be opposed by the general current of other authorities. There is no necessity, however, for deciding how the question would be affected by the rules of evidence at common law, since it must now be governed by the operation of the statute.  If this requires the consideration to appear in writing, of course, the parole evidence was not legally admitted ; but if it merely requires written evidence of the *act* or *duty to be performed*, or, in other words, that the *promise* merely shall be in writing, it must be understood to validate and legalize the contract, (if it would be effectual without writing before the statute,) when this single superadded requisite is satisfied.

That part of our statute for the prevention of frauds and perjuries, which relates to this question, is in the following words :—
" That no suit, in law or equity, shall be brought or maintained,
" upon any contract or agreement hereafter to be made, whereby
" to charge the defendant upon any special promise to answer for
" the debt, default, or miscarriage of another person ; unless the
" contract or agreement, upon which such action shall be brought,
" or some memorandum or note thereof, shall be made in writing,
" and signed by the party to be charged therewith, or some other
" person thereunto by him lawfully authorzed."  This is nearly a transcript of the corresponding clause in the 29 *Ch. II. c.* 3, *sec.* 3.  The only difference which can at all affect the sense is, that in the English statute the word " contract" is not inserted, and the word " agreement" occurs but once, and stands in the place of the words " contract or agreement," where these are repeated in our act.

It was decided in England for the first time, that the consideration of the promise, as well as the promise itself, must be in writing, by the court of King's Bench in *Wain* vs. *Walters*, 5 *East*, 10.  This decision was regarded as an innovation by the profession in that country, as appears by the following remarks of Eldon, Ld. Ch. in *ex parte Gorden*, 15 *Ves. Jr.* 286.  " The first objection, viz—that which *Wain* vs. *Walters* was cited to support, is of great importance.  Until that case was decided, some time ago, I had always taken the law to be clear, that if a man agreed

ORLEANS, ·
*March*,
1831.

Smith
*vs.*
Ide.

In writing to pay the debt of another, it was not necessary that the consideration should appear on the face of the writing." The doctrine of that case has occasioned much discussion both in England and this country, and has at last become fully established in the different English courts. It has been admitted in some of the United States, and rejected in others. Our statute is comparatively recent, and I am not aware that this question has ever before arisen under it.

In *Leonard* vs. *Vredenburgh*, 8 *Johns*. 23, Kent, Ch. J. proceeds to class the different cases connected with this enquiry. The first class consists of those cases in which the guarantee or promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the credit given to the principal or direct debtor. The second is where the collateral undertaking is subesquent to the creation of the debt, and was not the inducement to it, though the subsisting liability is the ground of the promise, without any distinct and unconnected inducement. The third is when the promise to pay the debt of another, arises out of some new and original consideration of benefit or harm, moving between the newly contracting parties. The two first classes he treats as obviously within the statute, and the other not. It is evident that the present question has no concern with the last description of cases here given. And as to the others, there is this distinction, that in those falling within the second class, some new or additional consideration is necessary to give effect to the collateral engagement; while in those belonging to the first, no consideration is required to exist distinct from that which is contained in the principal contract, and which passes between the direct contracting parties. The auxiliary promise, as it forms a constituent part of the entire contract at the time, is supposed to participate in its consideration.—14 *Ves. Jr.* 190; 8 *Johns*. 23; 11 *Johns*. 221; 9 *East*; 338; 7 *C. L. Rep.* 414. It is on this principle that guarantees are usually enforced, as there is generally no consideration distinctly applicable to those engagements. If, however, an undertaking in the nature of a guarantee appears to be subsequent to the principal contract, having formed no part of the ground for the credit thereby given, it will belong to the second class of cases, and require a supervenient inducement or consideration to support it—4 *Pick.* 385 ; 2 *Saund.* 211 ; 7 *T. R.* 350, *n*.

The present case is manifestly within the first class according to this distinction. The promise of the defendant took effect

NN

ORLEANS,
March,
1831.

Smith
vs.
Ide.

simultaneously with that of Gilman : it was an essential ground of the credit which Gilman received, and without it that credit would not have been given. It had not, nor did it require, any consideration passing between the plaintiff and defendant ; but was sustained by its union with the principal or direct contract of purchase. Hence a question arises, whether the doctrine in *Wain* vs. *Warlters*, which was a case falling within the second class, extends beyond those collateral undertakings for which a distinct consideration is required. This point was discussed by the Supreme Court of New York in *Leonard* vs. *Vredenburgh*, above cited, and again in *Bailey and Bogert* vs. *Freeman*, 11 *Johns.* 221 ; and it was determined, that those facts which went to show that no actual consideration for the collateral promise was required to exist, by reason of its original connection with the principal contract, need not appear upon the written engagement ; but that, consistently with the decision in *Wain* vs. *Warlters*, they might be proved by parol evidence. Kent, Ch. J. in the first case expresses himself in these words : "To say that the promise is void, for want of disclosing a consideration, is assuming what the plaintiff offered to show ought not to be assumed, for that there was no distinct consideration passing between the plaintiff and defendant. Johnson's note given for value received, and, of course, importing a consideration on its face, was all the consideration requisite to show. The paper disclosed that the defendant *guarantied* this debt of Johnson ; and if it was all one transaction, the value received was evidence of a consideration embracing both the promises." Platt, J. says, in the last case,—"I think there is a sufficient "note or memorandum" of the whole agreement, including the consideration, stated in the written agreement to which the guarantee refers ; but if no consideration had been expressed in the written agreement, it might be shown by parole, because it is only necessary here to prove a consideration for the principal agreement." There can be no doubt of the correctness of these decisions ; and indeed the doctrine which they establish must have been always acted on to some extent, though perhaps without often giving rise to this inquiry as a distinct question. Every undertaking given by a stranger to a note or other contract to insure its payment or performance, whether by a writing on the back, or memorandum at the foot of it, or by a separate instrument, if the note or contract continues obligatory upon the proper parties to it, is a promise for the debt of another within the statute. Now it usually happens that these collateral engagements,

are extremely brief, often without date,and almost invariably with-
out the mention of any consideration. Yet, without any separate
consideration, such of them as take effect at the same time with
the main contract,and operate as inducements to it,are nevertheless
binding, when the facts showing this relation sufficiently appear.
In many instances the writing may furnish either express proof,
or a reasonable presumption, of all that is necessary in this res-
pect ; but in others, resort must be had, in a greater or less degree,
to parole evidence.

It follows from the view of this case which has already been ta-
ken, that the decision of the county court, in admitting the evi-
dence objected to, was most undoubtedly correct ; and there is
no necessity, in order to affirm their judgement, that we should
enter upon a more direct investigation of the doctrine advanced in
*Wain* vs. *Warlters*. But as the question is of general interest,
and is fairly before the Court upon this record, it will be briefly
considered.

The decision in *Wain* vs. *Warlters* is rested chiefly upon a distinc-
tion taken between an *agreement* and an *undertaking* or *promise*.
And it seems to be admitted, at least by implication, that if only
the latter expressions had been used in the statute, the considera-
tion for such *undertaking* or *promise* would not be required to ap-
pear in writing. One of the judges goes even farther than this,
and says that if the statute had required, that the " promise or
agreement" on which the action is brought should be in writing,
he should have thought the statute was satisfied by putting the
promise into writing without the consideration. Ld. Ellenborough,
by whom the leading opinion in the case was pronounced, consid-
ers the " special promise," upon which the defendant is charg-
ed, to be but a part of the " agreement," on which the action is
brought, and proceeds to ascertain the legal import of the word
*agreement*. This he makes to consist in the meeting or assent,
upon a consideration, of two or more minds, which must be so
certain and complete as to be mutually binding, so that each party
may have his remedy upon it. Hence the conclusion is drawn,
that as the *agreement* is to be in writing, it must, of course, when
reduced to writing, exhibit those mutual considerations which are
essential to constitute it an agreement.

That this was the principal ground of the decision, appears also
by the refusal of the same court, to extend the doctrine to those
sections of the act in which the word *agreement* does not occur.
Thus in a case arising soon after under the 17th section, in which

ORLEANS,
March,
1831.

Smith
vs.
Ide

ORLEANS,
March,
1831.

Smith
vs.
Ide.

it is required that the "bargain," or a note or memorandum thereof, shall be in writing, the paper offered in evidence was adjudged not to express a sufficient consideration, and for that cause was rejected at *Nisi Prius* on the authority of *Wain* vs. *Warlters*, and the plaintiff became nonsuited. But the nonsuit was set aside by the full court, who determined that under that section, it was not required that the writing should disclose a consideration ; and the two cases were distinguished, on account of the peculiar efficacy of the word *agreement.*—6 *East*, 307.

It is not my purpose to discuss the etymology of this word, or to question the technical meaning which is here affixed to it. It will be admitted by all that it has likewise a more loose and popular meaning, synonymous with *promise*, or *undertaking*, and the question is, in which sense it was used by the legislature.

If by the term *agreement*, in this instance, was intended all that is claimed for it, it assumes a signification more extensive than a promise, and is nothing less than a mutual stipulation, which may contain any number of acts to be performed on each side. And this, to be binding upon both parties, must be signed by both ; for the party who does not sign it cannot be "charged therewith." But the policy of the act is evidently limited to a single object, which is to prevent fraud and perjury in proving the promise of one man to pay the debt of another. So far the reasons for such a law are strong and obvious, but they extend no farther. And if we admit, that the other party might become bound to the terms of the agreement by accepting it, and acting upon it, without signing, yet the evidence of his obligation to perform it would not appear upon the instrument, and, of course, the whole consideration for the defendant's promise would not be in writing. This difficulty has led Mr. Roberts to observe, in his treatise on the statute of frauds, page 118, (note,) that the doctrine held in *Wain* vs. *Warlters* would render it necessary, in most cases, that both parties should sign the agreement ; a doctrine, he remarks, "rising greatly above the level of antecedent opinions and authorities." It may be further remarked, that there are cases clearly sanctioned by the statute, which come short of this notion of a technical agreement. Such would be the case, where a promise to pay the debt of another is given upon a consideration which is not executory. Here is no mutual obligation, but a mere promise, which binds no one but the promissor ; and the recital of the consideration does not at all affect the character of the contract. There is then strong ground to believe, that the word *agreement* was not used

ORLEANS,
March,
1831.

Smith
vs.
Ide.

in this fixed and technical sense, but was introduced as a mere change of expression descriptive of a promise in all its varieties of form. And the phraseology employed in this clause of the act, in our opinion, fully justifies this construction; for though the action is brought on the *agreement*, its only effect is to enforce the *promise*; the defendant is charged for the same thing, and to the same extent, by the promise, and by the agreement; therefore, these two words must be understood as synonymous.

This is the result at which the courts in Massachusetts and Connecticut have also arived, after the most elaborate investigation. 5 *Mass.* 358; 7 *Ib.* 233; 17 *Ib.* 122; 1 *Sw. Dig.* 237; 6 *Con. Rep.* 81.

Having come to the conclusion, that the statute only requires the *promise* to be in writing, it is scarcely necessary to add, that this requisite does not, in the ordinary sense of it, extend to the consideration. A promise and its consideration are so far distinct, that the terms by which the promise is expressed do not, of course, embrace the consideration.

Fraud and perjury are much more to be apprehended in parole proof of the promise, than in that of the consideration. The subject of the testimony in one case is but language, which may frequently be misconstrued or falsely stated, without affording to the injured party a possibility of redress; while in the other, it is generally something capable of being seen and traced. That there is some danger, in permitting even the consideration to be thus proved is true, but still the requirement of a written promise furnishes to the party a reasonable protection, and fully equal to that which is provided in the other parts of the act.

The last point made in this case depends on the question, whether the undertaking of the defendant was absolute or conditional. And we think it was an absolute engagement that Gilman should pay for the horses at the expiration of sixty days, or that the defendant would himself make the payment. This is the obvious import of the language used, and such is the character which has been given to other like engagements by numerous adjudications. Therefore, on failure of payment at the time it fell due, the defendant became fixed with this debt, without reference to any demand on Gilman or notice to himself.—12 *Mass.* 14; 14 *Johns.* 349; 20 *Ib.* 365; 6 *Con. Rep.* 315.

Judgement of the county court affirmed.

*Upham*, for plaintiff.
*Smith and Peck*, for defendant.