Bean, plff. in equity *v.* Herrick.

*Judgment on the verdict.*

---

## BEAN, *plff. in equity vs.* HERRICK.

If a party make a false affirmation, although he has no interest of his own to serve, whereby another sustains damage, he is liable to an action.

Though the maxim *caveat emptor* is a sufficient answer to mere silence in regard to defects open to observation, yet where B. purchased of S. a large quantity of land, upon the strength of a written statement furnished by H., who held the legal title, giving a minute and particular description thereof, the land being one hundred miles distant, and which H. knew was not to be personally examined by B., he was held answerable in damages to B., on its appearing that the representations were false, and known by H. to be so when made.

THIS was a bill in equity, in which the plaintiff set forth a purchase of the defendant of a large quantity of land in the towns of *Kilmarnock* and *La Grange,* in the county of *Penobscot.* That he was induced to purchase, by the false and fraudulent representations of the defendant as to the quality of the land, quantity and quality of the growth upon it, &c., which representations, it was alleged, the defendant well knew to be false.

Bean plff. in equity *v.* Herrick.

It appeared that the bargain was made with one *Smyth*, though the defendant gave the deed.

At the *July* term, 1834, in *Waldo*, the Court made the following order, *viz.*: "The Court, having examined the bill and "answer and the written testimony by the parties respectfully "adduced, do order that the parties make up an issue to be tried "by a jury in the county of *Kennebec*, at the next *October* term, "submitting it to them to determine — First, whether in the sale "made by said *Herrick* to said *Bean*, which resulted in the con- "veyance by the said *Herrick* to the said *Bean* on the 20th day "of *Oct.* 1832, of certain lands in the towns of *Kilmarnock* and "*La Grange*, fraud was practiced by said *Herrick* upon said "*Bean*. Secondly, if so, to what amount the said *Bean* has "been injured thereby. And it is further ordered that in the trial to "be had as aforesaid, there be submitted to the jury the following "testimony and none other, *viz.*: the bill and answer, with the "plan or plans and the written description of the land, made by "*Herrick*, and used or referred to at the time of the sale, the "depositions already taken, together with such other depositions as "may be taken by the parties respectively on or before the first "day of *September* next: in addition to which, each party is at lib- "erty to bring two witnesses to be examined at the trial *viva* "*voce*, together with any other written evidence pertinent to the "issue."

At the *October* term, the case was submitted to the jury upon the issue and upon the evidence directed by the Court.

The Chief Justice, who presided, was requested by the defendant's counsel to instruct the jury, that the defendant was not answerable for any misrepresentations he might have made as to the quality, condition or value of the lots, which the plaintiff might have seen by going upon them. That the plaintiff should have examined for himself or taken security that the lots were as represented ; and the title to them having passed by the defendant's deed to the plaintiff, the latter has no remedy, except upon the deed. That the defendant was not liable for any representations made by him, unless proved to be false, and known by him to be so when made, and made with intent to defraud the plaintiff. That if the defendant believed his representations to be true

Bean, plff. in equity v. Herrick.

when made, although not true in fact, he was not answerable. That the defendant was not liable, if the jury believed the land was fairly sold by the defendant to *Smyth*, and that the deed was given by the defendant to the plaintiff, in execution of the contract between *Smyth* and the plaintiff.

Upon these points the Judge withheld the instructions requested, except as hereafter stated ; but he instructed the jury that as the defendant knew the plaintiff was to purchase without seeing the land, which was one hundred miles distant from the place of sale, and from the residence of the plaintiff, if the defendant represented the land, or any part of it, to be heavily timbered ; that, the growth upon it, or any part of it, remained green ; that the land or any part of it, was not injured, or but little injured by fire ; or that the land, or any part of it, was traversed with roads, when he knew that such were not the facts; or if he represented the land, or any part of it, to be good for farming when he knew it to be bog, or worthless for that purpose, and either of these representations was made with intent that the plaintiff, if he should become the purchaser, should be defrauded, and the plaintiff was thereby defrauded, the issue was maintained on the part of the plaintiff.  But that it was not maintained by proof of an over-estimate by the defendant, of the value, or by a false estimate of the quality of the land, except as before *stated*; nor if the defendant believed the representations to be true. And that upon the foregoing principles, the issue would be sustained for the plaintiff, although the defendant had sold to *Smyth* if he aided in defrauding the plaintiff.

The jury returned a verdict for the plaintiff.  If the instructions requested and withheld, ought to have been given ; or those which were given, were erroneous, the verdict was to be set aside and a new trial granted ; otherwise it was to stand for such decree, as the equity of the case might require.

*R. Williams*, for the defendant, argued in support of the positions taken at the trial, citing the following authorities : *Sugden's Vendors*, 2, 8, 195, 200 ; 2 *Kent's Com.* 428, note ; *Newland on Cont.* 357 ; 2 *Dane's Abr.* 560, 562 ; *Roswell* v. *Vaughan, Cro. Jas.* 196 ; *Powell* v. *Clark*, 5 *Mass.* 355 ; *Dyer*

& al. v. *Lewis*, 7 *Mass*. 284; *Cro. Jas*. 386 ; 2 *Dane's Abr*. 543; *Harvey* v. *Young*, *Yelv*. 21 ; 2 *Dane's Abr*. 549, 558.

*Allen*, for the plaintiff, cited *Sugden's Vendors*, 197 ; 1 *Mad*. 208, 209, 212 ; 5 *Johns. Ch. R*. 174 ; *Broderick* v. *Broderick*, 1 *P. W*. 239 ; 5 *Mum. R*. 183; *Newland on Con*. 361; 1 *Brown's Ch. Cas*. 141 ; *Bliss* v. *Thompson*, 4 *Mass*. 488; *Morton* v. *Chandler*, 8 *Greenl*. 9 ; *Apthorpe* v. *Comstock*, *Hopk*. 143 ; *Irving* v. *Humphrey*, *ib*. 284 ; *Livingston* v. *The Peru Iron Co*. 2 *Paige's R*. 390 ; 3 *Paige*, 94.

WESTON C. J. delivered the opinion of the Court.

It is contended, that the defendant had no interest in the sale to the plaintiff, having previously agreed to sell to *Smith*, and that he merely executed a contract of sale made by him. The jury, however, have found that he made representations which he knew to be false, with the intent that the plaintiff should be defrauded, and that he was thereby defrauded. In the leading case of *Pasley* v. *Freeman*, 3 *T. R*. 51, it was decided, upon great consideration, that if a party make a false affirmation, although he has no interest of his own to serve, whereby another sustains damage, he is liable to an action. The same principle was recognised in *Haycroft* v. *Creasy*, 2 *East*, 92, but it was there holden that, to charge the party upon such false affirmation, he must have known it to be false, and have made it with the design that another should be injured, although he himself had nothing to gain by it. These cases are noticed with approbation, by *Marshall Ch. Justice*, in delivering the opinion of the Court in *Russell's ex'rs*. v. *Clark's ex'rs*. 7 *Cranch*, 69, where he says, " if an act in itself immoral, in its consequences injurious to another, performed for the purpose of effecting that injury, be not cognizable and punishable by our laws, our system of jurisprudence is more defective than has hitherto been supposed." *Upton* v. *Vail*, 6 *Johns*. 181, adopts *Pasley* v. *Freeman;* but in *Young & al* v. *Covel*, 8 *Johns*. 23, it was held that deceit is the gist of the action, and that a fraudulent design must be proved in the party attempted to be charged. And we are of opinion that this objection cannot avail the defendant, even although his agreement with *Smith* may have been fairly made.

It is urged that the jury should have been instructed, that the defendant had not occasioned the plaintiff any injury, as his interference was after the contract, made by the plaintiff with *Smith.* But the false affirmations, made in writing under the defendant's hand, were used by *Smith*, before the contract was made., Afterwards, and before the deed, the truth of the affirmations in writing were re-asserted to the plaintiff, by the defendant in person. If he had then truly represented the state of the lands to the plaintiff, he would not have accepted the deed, and would have been furnished with matter of defence against the contract, which he could not, under such facts, have been compelled to execute.

It is further insisted that the charge is not supported, because the jury have found that the difference between the value of the lands, and the price agreed to be paid for them is not much over ten per cent. There may be a failure of proof of fraud from inadequacy of price, upon which the case did not turn, but upon other distinct and independent grounds.

But the main point, upon which the defence is placed, is, that upon the facts the plaintiff is without remedy, either at law or in equity. That he should have examined the land for himself, or taken covenants for his protection, and that if he is injured, it is the consequence of his own folly and imprudence. That he has sustained damage, occasioned by the fraud of the defendant, the jury have found ; and if he is denied a remedy, it is withheld rather by the policy of the law, than the dictates of morality. The principle of *caveat emptor* has certainly been extensively applied in suits at law ; especially in the sale of real estate. And it has not been without its influence, in the sale of personal chattels. It is not easy to reconcile all the cases upon this subject. Some of them have been more indulgent to fraud and misrepresentation, than is consistent with morals, or the common sense of mankind. The case of *Pasley* v. *Freeman* is distinguished for its high moral tone ; and the general principles there laid down, if carried out, would sustain an action at law against the defendant.

One of the earlier cases, of an opposite character, is *Chandler* v. *Lopus, Cro. Jas.* 4, where a jeweller sold a stone, as and for a bezoar stone, for a high price, when it was not a stone of that

description. And the court held that the party injured was without remedy, even if the defendant knew at the time that it was no bezoar stone. This case is justly and pointedly reprobated by *Parker C. J.* in *Bradford* v. *Manly*, 13 *Mass.* 139, who insists that it cannot be received as law in this country, and would not at the present day be recognised in *England.* The case of *Bayley* v. *Merrill, Cro. Jas.* 196, was decided a few years after *Chandler* v. *Lopus*, in the same reign, where the plaintiff, a carrier, was injured by giving credit to the false affirmation of the defendant, that a quantity of madder, which weighed twenty-two hundred, was only of the weight of eight hundred pounds, for which it was holden that no action could be sustained.

The opinion of *Lord Rosslyn,* in *Outfield* v. *Round,* 5 *Vesey, jun.* 508, has been cited by the counsel for the defendant, from *Sugden,* where a contract had been made for the purchase of a meadow, without any notice of a foot way around it and across it. His Lordship decreed a specific performance, saying he could not help a purchaser, who did not choose to inquire. There the vendor was merely silent. It would doubtless have been otherwise decided, if he had falsely and fraudulently affirmed that there was no footpath ; for it was a bill for specific performance ; and the court would not have exerted its discretionary power, to aid such a party. As it was, *Lord Manners* said, in 1 *Ball and Beatty,* 350, that he believed the bar was not very well satisfied with that decision.

In *Powell* v. *Clark,* 5 *Mass.* 355, a tract of land was described in the deed as containing a certain number of acres; this was holden not to amount to a covenant that the land did contain that quantity. But it has been held, as it ought to be, a good defence to a bill for specific performance of a contract for the purchase of real estate, that there was not so much land, as the contract described. 3 *Page,* 94, *Veedor* v. *Fonby.* Of the same character was the case of *Dyer* v. *Lewis,* 7 *Mass.* 284, where a sloop was described in the bill of sale, as of greater tonnage, than she proved upon admeasurement.

*Lysney* v. *Selby,* 2 *Lord Raymond,* 1118, was an action at law, which was sustained against the vendor of an estate, for affirming that the rent of the estate was higher than it was in truth.

In *Bliss & al.* v. *Thompson,* 4 *Mass.* 488, the plaintiffs had been induced, by the false and fraudulent representations of *Thompson,* to sell their interest in certain *Kentucky* lands, and *Thompson* having realized, from a prior warrantor of the plaintiffs, a greater sum, was holden answerable to them, in an action for money had and received, for the difference. The court there say that, "not only good morals, but the common law requires good faith, and that every man in his contracts should act with common honesty, without overreaching his neighbor, by false allegations or fraudulent concealments." *Hill* v. *Gray,* 1 *Starkie's Rep.* 434, was an action brought to recover the price, which the defendant had agreed to pay for a picture. It did not prevail, because the plaintiff's agent had suffered the defendant to purchase, under an illusion, which he knew existed in his mind, which he did not remove, that it belonged to another individual.

The common law does not require the vendor to disclose defects, which are open to the observation of both parties. Nor does it afford a remedy for false assertions in regard to what is matter of opinion and judgment, as to the value of the property sold. 2 *Kent,* 381, and the cases there cited. In *Vernon* v. *Keys,* 12 *East,* 631, which related to the sale of certain buildings, &c. *Lord Ellenborough,* in delivering the opinion of the court, says, "a seller is unquestionably liable to an action of deceit, if he fraudulently misrepresent the quality of the thing sold, to be other than it is in some particulars, which the buyer has not equal means with himself of knowing; or if he do so in such a manner, as to induce the buyer to forbear making the inquiries, which for his own security and advantage, he would otherwise have done.

*Sugden on Vendors,* 221, *Phila. edition,* treating of defects in the quality of an estate, sold or contracted for, states that the rule, *caveat emptor,* generally applies; and therefore, although there be defects in it, yet if they are patent the purchaser can have no relief. Yet he cites several cases, where a false description being given, in relation to points open to detection, relief has been afforded in equity, by decreeing compensation to the purchaser.

Bean, plff. in equity *v.* Herrick.

In *Dale* v. *Rooservelt,* 5 *Johns. ch.* 174, relief was afforded where a false representation had been made by the defendant, of the existence of a valuable coal mine on the bank of the *Ohio* river, on a tract of land, which the plaintiff's testator had thereby been induced to purchase. And in *McFerran* v. *Taylor & al.* 3 *Cranch,* 270, in chancery, it was holden that he, who sells property, on a description given by himself, is bound in equity to make it good.

The rule of *caveat emptor* is useful in the community. It leads to vigilance and circumspection ; and servs to check litigation. It is a sufficient answer to mere silence, in regard to defects open to observation. And it is not every falsehood, against which common prudence might guard, which will entitle a party injured by it, to appeal to a court of law or equity for redress. The line which separates cases, where the rule of *caveat emptor* applies, from others which call for relief, is not defined with entire precision. Each one will rest, in some measure, upon its peculiar circumstances. In the case before us, we are of opinion that relief ought to be afforded, and that the jury were properly instructed. When *Smith* made the contract with the plaintiff, he did it upon the strength of a written document, furnished by the defendant, giving a minute and particular description of each lot. Before the deed was made, the defendant presented himself to the plaintiff, in the character of one, who having previously sold to *Smith,* had no interest in the conveyance, then about to be made. He was known to be a man of high standing and respectable character. Upon the earnest inquiry of the plaintiff, he re-asserted all that was contained in the written description he had before furnished, saying if he made any alteration, it would be to represent the land more favorably. That was in the wilderness, at the distance of an hundred miles. We cannot but say, that all this assurance, thus repeated, coming from a source, claiming to be disinterested, was calculated to put common prudence off its guard. The defendant, in his answer, says that he did believe that he was justified in the statement he made to the plaintiff, and that it was correct and fair, in his judgment, from the information he possessed. We hope for his sake, that this averment is true, although the jury have not given credit to it.

His character will call for a favorable interpretation of his acts, among those who know him.

The jury having found the issue, submitted to them, in favor of the plaintiff, and having settled the amount of damage sustained by him ; and the Court having taken the whole matter into consideration, do hereby decree and order, that the deed of conveyance, made by the defendant to the plaintiff, of the lands in controversy, be held good and valid ; that the plaintiff pay the amount of his notes given therefor, with interest ; and that the defendant pay to the plaintiff the amount of the damages awarded by the jury in his favor, with interest thereon from the time of the verdict to the time of rendering this decree ; and that he further pay to the plaintiff his legal costs.