## RINDSKOPF VS. THE STATE.

BASTARDY ACT. (1–3) *Duties of J. P.; and how jurisdiction acquired by circuit court.* (4) *Form of judgment against putative father.* (5, 6) *Amount to be paid for support of child. Discretion of circuit court. Circumstances to be considered.*

JURY. (7) *Discharge of a juror by stipulation in bastardy proceeding.*

EVIDENCE. *Contradicting witness by evidence of conversations.*

1. Where a person complained of under the *bastardy act* (ch. 37, Tay. Stats.) waives an examination before the justice, and enters into a recogniz-

ance to appear before the circuit court and answer the charge, and does in fact so appear, and go to trial upon the issue, the circuit court *has jurisdiction* to try the cause. *State v. Braun* (31 Wis., 600), so far as it appears to intimate a contrary doctrine, *overruled.*

2. Sec. 4 of said act does not require the justice to make a formal adjudication in the nature of a judgment, that there is probable cause to believe the accused person guilty, and to enter such judgment on the docket; but merely requires him to bind the accused in a recognizance, " in case there is probable cause," etc.

3. Where, in such a proceeding, the justice requires the defendant to enter into such recognizance, that fact must be held to imply that he had probable cause to believe that defendant was father of the child.

4. Where defendant was adjudged to be the father of a bastard child, a further judgment that he pay for its support a certain annual sum for thirteen years will not be reversed because it does not in terms make the obligation to continue such payment depend upon the *continuance of the child's life* — such being the legal effect of the judgment, without any specific provision therefor.

5. The statute vests a large *discretion* in the circuit court in regard to the *amount* which the defendant shall be required to pay in such cases for the *support of the child;* and the court may properly consider the *wealth of the defendant*, as well as the condition in life of the complaining witness.

6. Where defendant's counsel admitted and claimed before the jury that defendant was a member of " a wealthy and respectable firm " in a large commercial city, and the bill of exceptions shows nothing to the contrary, and it also appeared that the complainant worked for a living as a domestic: *Held*, that a judgment that defendant pay $240 for the support of the child from its birth to the time of trial, and the same sum annually thereafter for thirteen years, *cannot be reversed as excessive.*

7. The parties to a *proceeding in bastardy*, during the progress of the trial in the circuit court, stipulated that *one of the jurors should be discharged*, and the issue tried by the remaining eleven. *Held*, that this did not render the trial and verdict illegal.

8. Witnesses cannot be examined as to *conversations* between themselves and a witness on the other side, *for the purpose of contradicting his testimony*, unless his attention has first been called to such conversations.

ERROR to the Circuit Court for *Washington* County.

The plaintiff in error, *Max Rindskopf*, was brought before a justice of the peace in Washington county, in September,

1872, on a complaint against him under the bastardy act, charging him with being the father of a child of the complaining witness, which child was then living and was about one year old. The accused objected to the proceedings, and moved to quash the warrant, on the ground that proceedings for substantially the same cause had been instituted before one Otto Friebing, a justice of the peace in and for Milwaukee county, on the 5th of August, 1871, which proceedings (it was alleged) had never been discontinued or concluded, but were still pending. This motion being denied, and the state having moved for an adjournment of the cause, on account of the absence of important witnesses, the accused waived an examination by the justice, and voluntarily entered into a recognizance to appear in the circuit court for Washington county at its next term.

At the trial in the circuit court, the state put in evidence a transcript from the docket of Otto Friebing, a justice of the peace of Milwaukee county, above mentioned, from which it appears that on the 5th of August, 1871, the person on whose complaint the present proceedings were instituted, made complaint before said justice Friebing, stating that she was then pregnant with a child, which, when born, would be a bastard, and that the same was begotten by said *Rindskopf;* that the latter was thereupon arrested, and when the suit was called, the parties being in court, " the accused person declared to make a settlement in the sum of two hundred and fifty dollars, which amount the complainant agreed to receive in full satisfaction." Said transcript does not show any further proceedings before justice Friebing. The rest of the testimony, which was voluminous and contradictory, need not be stated. There was no dispute as to the birth of the child, which was then living, the fact of its being a bastard, or the fact that the accused had had sexual intercourse with the mother on various occasions near the time laid in the complaint; but the defense attempted to show (contrary to her testimony) that she had had

sexual intercourse with several persons besides the accused, at about the time aforesaid, and during a period of fifty days before and after that time. Certain questions asked witnesses for the defense, as to conversations between them and the complainant, were ruled out, upon grounds which will sufficiently appear from the opinion.

Verdict of "guilty." The court refused to set aside the verdict and grant a new trial. The form and substance of the judgment are sufficiently stated in the opinion. The defendant below sued out a writ of error to reverse the judgment.

*J. V. V. Platto*, for plaintiff in error:

1. The circuit court had no jurisdiction to try the defendant, because there was no examination before the justice. R. S., ch. 37. Waiver or consent of parties will not confer jurisdiction. *Dykeman v. Budd*, 3 Wis., 640; *Verbeck v. Verbeck*, 6 id., 159; *Hills v. Miles*, 13 id., 625; *Miles v. Chamberlain*, 17 id., 446; *Widner v. Wood*, 19 id., 190; *Chinnock v. Stevens*, 23 id., 396. Want of jurisdiction of the *subject matter* is never waived. *Damp v. Town of Dane*, 29 Wis., 420. It is expressly adjudged in *State v. Braun*, 31 Wis., 600, that the circuit court in a case like this cannot acquire jurisdiction unless the justice has first adjudged that there was *probable cause*, etc. 2. The proceeding being *quasi* criminal, and essentially *penal*, the court could not render judgment upon a verdict found by only *eleven* jurors. Consent of the defendant did not give such jurisdiction. See authorities cited above, and *Comm. v. Shaw*, 7 Am. Law Reg., 290; *Cancemi v. The People*, 18 N. Y., 128. 3. The order of filiation and judgment is void because it commands defendant to pay a certain sum of money monthly for a period of thirteen years, without qualification or condition. *Rex v. Barebaker*, 1 Salk., 121: *King v. Burrell*, 1 Mod., 20; *LeRoy v. Sharp*, 1 Siderfin, 222; *Rex v. Brown*, 2 Salk., 480; *Judson v. Blanchard*, 3 Conn., 579; *Queen v. Lewis*, 1 Perry & Dav., 112; *Rex v. Street*, Strange, 788; *Bennett v. Hall*, 1 Conn., 41. 4. The allowances for the past and future maintenance of the child are

exorbitant, with nothing to justify them in the evidence as to the character and situation in life of the parties; and it is the duty of this court to interfere. *Hoffman v. The State*, 17 Wis., 596; *Smith v. Lent*, 37 Me., 546; *Medler v. The State*, 26 Ind., 171. The proof was that the complainant was a domestic, and worked out from home, and that herself and parents were very poor. And the only *evidence* in the case as to the defendant's means tended to show that he was poor. The inadvertent utterances of counsel in addressing the jury, where he was not challenged for the admission of any fact, and where there was no understanding that his words were to be recorded as an admission, and they were not in fact put upon the record at the time, were not in the nature of evidence, should not have been inserted as an amendment to the bill of exceptions on motion of the defendant in error, and ought not to be considered by the appellate court.

*Frisby & Weil*, for defendant in error, contended that when the circuit court (being one of general jurisdiction) has rendered judgment, its jurisdiction will be *presumed*, unless the absence of it appears from the record (*Falkner v. Guild*, 10 Wis., 572; *Bidwell v. Astor Mut. Ins. Co.*, 16 N. Y., 263, 267; *Washburn v. The People*, 10 Mich., 372, 383; *Morrissey v. The People*, 11 id., 327, 333-4, 341, 343); and that there is nothing properly in the record in this case (Rule 2, S. C. Rules; *Sup'rs v. Lucas*, 30 Wis., 276; 1 Pin. Wis., 301), which shows that there was no examination before the justice. They further argued that as sec. 3 of the bastardy act provides for a settlement under specified restrictions and conditions, and sec. 4 declares that if the accused does not comply with the provisions of sec. 3, and there is probable cause, etc., the justice shall bind him by a recognizance, etc., if it must appear that an examination was had, to give the circuit court jurisdiction, it must also appear that the accused *did not comply with the provisions of section* 3; and if the mere fact that he was bound over by the justice creates a *presumption* that he did not comply with sec. 3 (which will

hardly be denied), it creates an equal presumption that the examination was had, if that was necessary. 2. They further argued that the defendant below *waived* any objection founded upon the want of an examination before the justice, by not taking that objection at the circuit (*Chapel v. White*, 3 Cush., 537; *Wilbur v. Crane*, 13 Pick., 284; *State v. Vogel*, 22 Wis., 471; 3 Ind., 564; 2 id., 485; 17 id., 526; 4 Blackf., 269; 5 id., 165); that in a criminal action, if the defendant, on being arrested and brought before a justice, should voluntarily give an appeal bond without any trial being had in the justice's court, and should afterwards appear in the circuit court, and go to trial without objection, he would not be heard in this court to object that he was not tried by the justice; that the same would certainly be true in a civil action (*Mahr v. Young*, 13 Wis., 634; *Barnum v. Fitzpatrick*, 11 id., 81; *Lowe v. Stringham*, 14 id., 222), and this proceeding is more nearly allied to a civil than to criminal action. *Wilbur v. Crane*, 13 Pick., 284. 3. They contended, also, that the statute does not require the "probable cause" to be shown by examination, and such preliminary examination by the justice is not necessary, to give the circuit court jurisdiction; that as the case is not reviewed at the circuit court upon the evidence given on the examination, but entirely upon original.evidence given in the circuit court, such examination is of no importance, if the accused chooses to waive a provision made entirely for his benefit; and that this question was not involved in *State v. Braun* (31 Wis., 600), and remained an open one in this court. Against the view intimated in that case, counsel cited *Marston v. Jenness*, 11 N. H., 156. 4. As to the objection that the trial was by only *eleven* jurors, they cited *Commonwealth v. Dailey*, 12 Cush., 80; *Millett v. Hayford*, 1 Wis., 401; *Norval v. Rice*, 2 id., 22; *May v. R. R. Co.*, 3 id., 219; *State v. Vogel*, 22 id., 471; Const. of Wis., art. I, sec. 5. 5. As to the amount required to be paid by defendant, they cited *Owen v. The State*, 12 Wis., 559; *Hoffman v. The State*, 17 id., 596.

COLE, J.   This is a proceeding under ch. 37, R. S., to charge the defendant with the support of a bastard child.   The first objection taken here is, that the judgment of the circuit court is void for want of jurisdiction.   It is said that the record shows that there was no adjudication by the justice before whom the complaint was filed and who issued the warrant, that there was probable cause to believe the defendant to be the father of such child; and that without an adjudication of that fact by the justice, the circuit court had no jurisdiction of the proceeding.   Mr. Justice LYON, in the case of *State v. Braun,* 31 Wis., 600, expresses the opinion that this is the true meaning and proper construction of the statute, and that it was even questionable if the examination could be waived by the accused by entering into the recognizance required by the justice to appear before the circuit court to answer the charge made against him, so as to give the latter court jurisdiction.   An examination of that case will show, however, that this question, whether the jurisdiction of the circuit court depended absolutely upon the fact that the justice had formally adjudicated that there was probable cause to believe the accused guilty, was not necessarily involved, and therefore did not perhaps receive that careful consideration it would have received had it been essential to the decision of the point in judgment.   The real question in that case was, whether a writ of prohibition should issue from this court commanding a justice to refrain from further proceedings in a second prosecution for bastardy, where it appeared that on a former complaint and examination before another justice, it had been adjudged that there was no probable cause for believing that the accused was the father of the child; and, it being held that the first adjudication was final upon the subject matter of the complaint, and that a party might avail himself of it on a second prosecution as a defense and bar to that proceeding, the writ of prohibition was denied for that reason.   We are satisfied that the decision there made was correct and in accordance with sound principle.   But where

a party chooses to waive an examination before the justice, enters into a recognizance to appear before the circuit court to answer the charge, and does in fact appear and go to trial upon the issue, then whether the circuit court can be said not to have jurisdiction, is, as it seems to us now, a different question, and certainly was not definitely settled in *State v. Braun.* It appears to us that the circuit court, under such circumstances, would have jurisdiction to proceed and try the cause.

The fourth section of the bastardy act in substance enacts, that in case any person accused of being the father of a bastard child, fails to settle with the mother with the approval of the supervisors, and to give the required bond as specified in section 3, "and there is probable cause to believe the accused person guilty, the justice before whom the complaint shall be made shall bind such person in a recognizance," etc. Now it will be observed that the provision does not require that the justice shall make a formal adjudication of probable cause, in the nature of a judgment, and enter the same of record in his docket. But if "there is probable cause to believe the accused person guilty," he is to bind him in a recognizance. That is the language of the statute.

Now, assuming for the purposes of this case that the record shows that no examination was had before the justice — the defendant having waived the same, — it surely does appear that the justice did bind the defendant in a recognizance to appear at the next term of the circuit court to answer the charge, and that in fact the defendant did appear and went to trial upon the merits without objection. The fact that the justice required the defendant to enter into a recognizance to appear and answer the charge, indicates and implies, as forcibly as any act could, that such justice had "probable cause to believe" the defendant to be the father of the child. Otherwise his action in the matter is inexplicable. If the statute required the justice to make a judicial determination of record that there was "probable cause," etc., there would be more ground for claiming that such

determination must appear by the record, to render the proceeding regular, and in order to give the circuit court jurisdiction to try the cause.   But, as before observed, this is not the language of the statute.   It surely must be presumed that the justice had probable cause, founded upon some evidence or admission brought to his knowledge, for believing the defendant to be the father of the child, or he would not have required him to enter into the recognizance.   It seems to us that this sufficiently disposes of the objection that the circuit court never acquired jurisdiction of the cause, and that its proceedings and judgment were *coram non judice.*

During the trial, on account of the death of the mother of one of the jurors, the parties stipulated in open court to try the cause with eleven jurors, and the twelfth juror was thereupon excused by consent, and the trial proceeded, and the verdict was rendered by eleven only.   It is now objected that the discharge of one juror from the panel, even with the consent of the defendant, rendered the trial and verdict illegal.   This position we deem untenable.   It has been held in capital cases, that a defendant could not waive his right to a trial by a jury of twelve persons (*Cancimi v. People*, 18 N. Y., 128); but that rule is *in favorem vitæ*, and does not apply to a case of bastardy.  This proceeding, though *quasi* criminal in' character (*State v. Mushied*, 12 Wis., 561 ; *State v. Jager*, 19 id., 235), is intended to enforce the duty and obligation of the father to support his offspring.   It is quite analogous to a civil suit brought to enforce a merely private obligation, and the defendant may waive a strict adherence to the statutory and common law rule of proceeding.   The doctrine of waiver clearly applies — the defendant having consented to a trial by a jury of eleven persons.

The questions asked the witnesses Maximilian Lewis and Henry Adler, in reference to conversations with the complainant, and as to what she said about having had sexual intercourse with other men, were properly excluded.   If the object of those questions was to contradict the complainant, her atten-

tion should have been called to those conversations in order to lay the foundation for impeaching or contradicting her. This rule is elementary, and applies likewise to the ruling of the court in sustaining the objections taken to the questions asked Schungel as to his conversation with the complainant.

This brings us to a consideration of the objections taken to the form of the judgment.

The order of filiation finds that the defendant is the father of the bastard child of which the complaining female is the mother, and that he stand chargeable with the maintenance thereof. The court further ordered and adjudged that the defendant pay the complainant for the maintenance of the child, the sum of $240 per annum for the term of thirteen years from the date of the judgment; said sum to be paid in monthly installments of $20 each, on the first Monday of each month, in each and every year during said period; and also that he pay the complainant the sum of $240 for the support and maintenance of the child from its birth, with costs of the prosecution ; and that he execute the proper bond to the supervisors of the town, conditioned for the faithful performance of the order and judgment.

There are two serious objections taken to this judgment : First, it is said that it is illegal and wholly unauthorized in that it orders and requires the absolute payment of a specified sum monthly for a period of thirteen years, whether the child shall live so long or not. It is claimed that the duty and legal obligation of the defendant to support his illegitimate child only continues so long as the child may live, while this judgment, it is said, subjects the defendant to the absolute payment of the monthly allowance for the entire thirteen years. If this were a correct view of the force and binding nature of the judgment — if it imposed the absolute liability to make these payments for that period of time, even if the child did not live so long,— then we should deem the objection insuperable. But this is not a correct interpretation of the judgment. The liability of the defendant to make the payments will cease and

determine with the death of the child within the thirteen years. Suppose an execution should issue on this judgment after the death of the child, to collect any installment : would not the court recall the execution, upon the fact being shown that the child was dead, and that the duty of the father to support it was *functus officio ?*   Or suppose an action were commenced on the bond for a breach thereof in not making payments after the child died : could not the defendant answer that he had performed his obligation to indemnify the town against the support of the child ?   In either of the above supposed cases, it is very plain that the judgment would not be conclusive upon the question of the defendant's liability to make the payments, but he could show that he was exonerated from making them by the death of the child.   This, however, is matter of defense which the defendant might show whenever it was sought to enforce the judgment.   *Stokes v. Sanborn*, 45 N. H., 274–281 ; *Sweet v. Overseers of Clinton*, 3 Johns., 23 ; *Wallsworth v. Mead et al.*, 9 id., 367 ; *Rockfeller v. Donnelly*, 8 Cow., 643.   Indeed, if the judgment had contained a clause qualifying and restricting the payments " *so long as the child should live*," it would not more fully protect the defendant than as it now is.   For this is its meaning and undoubted legal effect, even in the absence of such a conditional clause.   And inasmuch as the judgment does not conclude the defendant on the question of liability so that he cannot show, in any proceeding to enforce the payment of the allowances, that the child is dead, and of course his duty to support it terminated by that event, we cannot see that he is in any way prejudiced in consequence of its being entered in the form it is.

Secondly, it is said that the allowance for the support and maintenance of the child is excessive and unreasonable.   This objection doubtless strikes the mind with some force when we consider only the character and condition of the complainant — that she was a domestic, and worked out for a living.   But it appears from the bill of exceptions that the counsel for the de-

fendant, in his opening address to the jury prior to the intro-
duction of any testimony on the defense, and also in his closing
argument, admitted and claimed that the defendant belonged
to a wealthy and respectable firm of the city of Milwaukee;
and this admission may be assumed to be in accordance with
the fact. And if it be true that the defendant is a member of
a wealthy firm, there is certainly nothing unreasonable or ex-
travagant in the allowance. It is no more than sufficient to
support, educate and clothe the girl decently and respectably.
And, as remarked by Mr. Justice PAINE, in *Hoffman v. The
State*, 17 Wis., 596, the statute evidently vests a large discre-
tion in the circuit court in making these allowances. That dis-
cretion should be and doubtless was exercised in this case with
reference somewhat to the character, wealth and situation in
life of the defendant. The bill of exceptions does not purport
to contain all the evidence given on the trial; and in view of
the statement of the defendant's counsel above alluded to, we
are unable to say that the amount ordered to be paid was un-
just or excessive. This same remark will apply to the objec-
tion that the amount allowed for the past maintenance of the
child was unreasonable and oppressive. There is nothing in
the case which warrants such an assumption.

On the whole case, therefore, we think the order and judg-
ment of the circuit court are correct, and that they must be
affirmed.

*By the Court.* — Order and judgment affirmed.