## SAGE *against* WILCOX.

The consideration of an agreement to answer for the debt of another, is not re-
quired, by the statute of frauds and perjuries, to be in writing.

An agreement on the part of the payee of a promissory note, to forbear to sue the
maker for one year, is a sufficient consideration of a guaranty, by a third person,
of the payment of such note.

Where an agreement in writing was made, by a third person, on the back of a
promissory note then due, in these words—" I hereby guaranty the payment of
the within note, one year from this date. whether a suit is brought against the
signer, or not ;" it was held, that this was a conditional engagement, requiring,
on the part of the holder, demand and notice, and did not support the allega-
tion of an absolute promise to pay the money at the end of a year.

*Hartford,*
*June,*
*1826.*

Sage
*v.*
Wilcox.

| 6 | 81 |
| 61 | 54 |
| 6 | 81 |
| 75 | 91 |

This was an action of *assumpsit.* The plaintiff, in his de-
claration, averred, that *Jacob Wilcox* was indebted to him, on a
promissory note, dated the 25th of *November,* 1822, in the sum
of 150 dollars ; and that, in consideration the plaintiff would
forbear the collection of it, for a year, the defendant, by a wri-
ting under his hand, on the back of the note, guarantied the
payment of it, whether a suit should, or should not be brought
against the maker. A forbearance for a specified period, was
then stated ; and that, about the time of the guaranty, the ma-
ker became insolvent, and has so continued ever since. A de-
mand on the maker, with notice of non-payment to the defend-
ant, was then averred ; and the declaration concluded with al-
leging a promise of the defendant to pay the plaintiff the sum of
money specified in the note, with interest, after the expiration
of said year.

On the trial of the cause, at *Hartford, February* term 1825,
before *Peters,* J. the execution of the note by *Jacob Wilcox,* was
admitted. The writing made and signed, by the defendant, on
the back of the note, was in these words : " *Berlin, February*
4th, 1823. I hereby guaranty the payment of the within note,
one year from this date, whether a suit is brought against the
signer, *Jacob Wilcox,* or not. *Norris Wilcox.*" The note be-
ing unpaid, the plaintiff, on the 7th of *February,* 1824, gave no-
tice of non-payment to the defendant. The plaintiff offered
testimony to prove, that the consideration of the defendant's
guaranty was an agreement, on the part of the plaintiff, to for-
bear suit against *Jacob Wilcox,* and to wait a year for his money.
The defendant insisted, that the plaintiff could not recover,

*Hartford,*
*June,*
*1826.*

*Sage*
*v.*
*Wilcox.*

claiming, that there was no consideration proved ; that if there were, it was variant from the consideration stated in the declaration ; and that it was inoperative, because it was not in writing. The judge instructed the jury, that if they should find, that the plaintiff agreed to forbear to sue the maker for the term of one year, and that, in consideration thereof, the defendant made the guaranty in question, they must return a verdict for the plaintiff. The jury found for the plaintiff ; and the defendant moved for a new trial, for a misdirection.

*N. Smith* and *T. S. Williams,* in support of the motion, contended, 1. That the undertaking of the defendant was without consideration ; and would not, therefore, support an action. The contract is in writing, and must speak for itself. This shews, that the defendant was to be equally responsible, whether the plaintiff did, or did not, forbear to sue. The defendant was a stranger to the transaction, and derived no advantage to himself, by his undertaking. The plaintiff was placed in no worse situation ; for it remained optional with him to forbear or not. *Peabody* v. *Harvey,* 4 *Conn. Rep.* 119. 122.

2. That as the consideration, if any existed, was not reduced to writing, the plaintiff was precluded from a recovery, by the statute of frauds and perjuries. The consideration is *a part* of the " contract or agreement ;" and is therefore, within the letter of the statute. This construction, also, is in accordance with the object of the statute ; as there is the same danger of fraud or perjury in admitting parol proof of the consideration, as of the promise. The point has been settled, by judicial authority, in *England,* and in the state of *New-York. Wain* v. *Warlters,* 5 *East* 10. *Saunders* v. *Wakefield,* 4 *Barn. & Ald.* 595. *Sears* v. *Brink,* 3 *Johns. Rep.* 210. 215. In *Violett* v. *Patton,* 5 *Cranch* 151, 2. the construction of the *English* courts upon the *English* statute, was recognized, by the supreme court of the *United States,* in considering the *Virginia* statute, which has a different phraseology.

3. That there was a variance between the contract stated in the declaration and the contract proved ; the former being an absolute, and the latter a conditional undertaking. A guaranty is not equivalent to an absolute engagement. *Huntington* v. *Harvey,* 4 *Conn. Rep.* 124. *Jackson* v. *Richards,* 2 *Caines* 345. *French's* executrix v. *Bank of Columbia,* 4 *Cranch* 161. *Bishop* v. *Dexter,* 2 *Conn. Rep.* 424. per *Gould,* J. The writing in

question differs from a blank indorsement only as it postpones the time of payment.

*W. W. Ellsworth,* contra, insisted, 1. That the question of consideration could not arise on this motion. The plaintiff introduced evidence, not objected to as incompetent, tending to prove a consideration ; the judge distinctly submitted the question upon that evidence, to the jury ; and the verdict conclusively establishes a consideration. There is nothing in the writing inconsistent with an agreement, on the part of the plaintiff, to forbear suit.

2. That the statute of frauds and perjuries does not require the consideration of an agreement to be in writing. [On this point the counsel was stopped by the Court.]

3. That there was no variance between the contract stated and that proved. In the first place, be the import of the writing what it may, it is stated in the declaration as it appears in evidence. The declaration says the defendant *guarantied* the payment of the note; and so says the writing. But secondly, the undertaking of the defendant was, to pay the money at the expiration of a year, if the maker did not. After the lapse of the time without payment, the plaintiff had only to give notice of that fact to the defendant, to make his right of action complete.

HOSMER, Ch. J. Three questions have been raised in this case ; and on these alone shall I express an opinion. 1. Whether there was a consideration for the defendant's promise. 2. Whether the consideration not being in writing, the case is within the statute of frauds and perjuries. 3. Whether the contract averred is supported by the one proved.

The first question proposed it is not difficult to determine. The mere promise of a third person to pay the debt of another, on forbearance of suit, without a stipulation on the part of the promisee to forbear, or some other new consideration, is not valid. 1 *Wms. Saund.* 211. *a. Com. Dig. tit.* Action upon the case upon Assumpsit. B. 1. 2. In this case, there was proved a promise of forbearance, commensurate with the defendant's guaranty. If there be any objection, it is not to the sufficiency of the evidence, but to the deficiency of the allegation to authorize its admission. It is not necessary, perhaps, to express an opinion on this point, although I entertain no doubt

concerning it.  2 *Chitt. Plead.* 81, 2.  *Lent* & al. v. *Padleford*, 10 *Mass. Rep.* 230.  On the trial, no objection was made to the competency of the evidence ; and if it were inadmissible, inasmuch as the jury have found the requisite facts, and the question proposed may fairly be raised, by a writ of error, brought to try the sufficiency of the plaintiff's declaration, I would not, for this cause, grant a new trial.

The second question, whether the consideration not being in writing, the case is within the statute of frauds and perjuries, is attended with no intrinsic difficulty ; but some embarrassment arises from certain determinations, which, in my judgment, cannot be supported.  I will first consider the point of enquiry on *principle*, and will then recur to the *decided cases*.

The statute 29 *Car.* 2. *c.* 3. *s.* 1. undoubtedly gave rise to our statute of frauds and perjuries ; and between these laws there is no difference in expression, except that the word " *contract*" in ours, immediately preceding the term " agreement," in the latter clause of it, is not in the *English* law.

It is particularly observable, that the precise mischief, which the statute was intended to remedy, can only be ascertained, by the words of the law, and the exposition of it in practice.  Had there been a preamble to the act, designating the inconveniences of oral testimony, and pointing out fraud in the proof of the consideration of a contract as one, there would be a certain object to guide us in its construction.  The law, in this event, must have been liberally expounded in suppression of the existing mischief.  But there is no preamble, nor any other *indicium*, except the words of the act, and the practical construction of it, to aid in its interpretation ; and in the absence of fact, it is clearly inadmissible to imagine at what precise inconvenience the statute was aimed, and then to expound it coextensively with the position assumed.  At common law, the consideration of all written unsealed promises may be proved by parol ; and whether the statute of frauds and perjuries has made an exception to this general principle, is the great object of enquiry.

The first expression in the statute is, " that no suit in law or equity shall be brought on any contract or agreement."  The words " contract" and " agreement" are used synonymously, and are followed by this phraseology " whereby to charge the defendant on any special promise."  The expression " special promise" most obviously is applied to the same subject, and

with the same extent, as the preceding words "contract or agreement." The word "special" has no other effect than to shew, that promises *in fact* were referred to, and not promises *implied* by law; for every actual promise is particular or special. The statute, then, comprising the same ideas it now does, might have been thus expressed; *whereby to charge the defendant on any promise, except a promise in law.* But a *promise* is distinct from the *consideration* on which it is founded; and of consequence, the statute regards promises only, and not their consideration.

As the term "agreement" has been made, by those who insist that the consideration is required to be in writing, the essential criterion of the legislative intent, I will attend to it particularly; and the enquiry will result in this; that in its usual popular signification, it is synonymous only with *promise*, and, at least, that it is very equivocal, like other terms comprising different meanings, according to the subject matter to which it is applied. If this proposition is established, it will make way for the application of a principle, conclusive on the subject of enquiry.

The philological discussion, on which I am now entering, in order to ascertain the precise meaning of the term "agreement," may be thought too particular; but a full and prominent view of this subject is of fundamental importance, and very necessary to a correct construction of the statute.

The word "agreement," in its popular and usual signification, means no more than *concord;* the union of two or more minds; or a concurrence of views and intention. The remote, or proximate, or any possible cause or occasion of an agreement, is a distinct thing, which, with little power of discrimination, every mind can perceive. This concord or union of minds, may be lawful or unlawful; with consideration, or without; creating an obligation, or no obligation. Still, by the universal understanding of mankind, proved by daily and hourly conversation, it is an *agreement ;* and it is not the less so, because it is opposed to law, or even to good morals. Thus mankind *agree* to form friendly societies; to do good; to perpetuate evil; to fight; to perform services; and with no other inducement than the propulsion of their wills. In short, every thing done or omitted, by the compact of two or more minds, is universally and familiarly called an agreement, by every one, who understands the use and meaning of language. Of this

Hartford,
June,
1826.

Sage
v.
Wilcox.

every person has intuitive evidence, and frequently employs the term in question to manifest that operation of minds, denominated *mutual assent*. Whether a consideration exists, is a distinct idea, and enters not into the popular meaning of the term. In most instances, any consideration, except the voluntary impulse of minds, cannot be ascribed to the numberless agreements, that daily and hourly are made. For example, *A.*, without any consideration, promises, in writing, to pay *B.* 1000 dollars, and *B.* accepts the promise. Is not this, by the universal assent of all, both learned and unlearned, an agreement? Do they not call it such? Or, do they wait to see whether it is on consideration, before they venture to give it this denomination? No one will be so absurd as to pretend it. In *Wain* v. *Walters*, 5 *East* 10. 17. it was said, by Lord *Ellenborough*, that the word "agreement," in a loose and incorrect sense, is sometimes used as synonymous with *promise* and *undertaking*, but in its more proper and correct sense, as signifying a mutual contract on consideration between two or more parties. But the word "agreement," with much deference to the learned and able jurist, I affirm, is, beyond all comparison, used more frequently to denote a mutual assent of minds without legal consideration, (such as his Lordship intended,) than it is to denote the promise or undertaking of one; and for the truth of this assertion, I appeal to every mind. This is a subject as level to the capacity of an ignorant, as of a learned man, and presents this sole enquiry; in what manner do mankind promulge that operation of minds, denominated *mutual assent?* Is it not by the term "agreement"? Are there not hundreds of instances, in which persons are said to *agree*, where no legal consideration exists, to one, where there is such consideration? Most unquestionably. This fact conclusively shews the broad error of Lord *Ellenborough's* remark. With the usual felicity of discrimination, for which that learned judge was distinguished, his mind would have perceived, that he blended together two distinct subjects; that is, an *agreement*, and the *cause* or *consideration* inducing it.

I have hitherto made enquiry into the popular or general signification of the word "agreement," and have shewn, in its broad and comprehensive sense, demonstrated by universal usage, it is synonymous with *the concord of two or more minds*, or *mutual assent*. This word, like many others, is sometimes restrained or limited, by the subject of its application; and

hence the propriety of the rule, that words are to be construed in reference to their subject matter. The law of *Edward* III., forbidding all ecclesiastical persons to purchase *provisions* at *Rome*, did not prohibit the buying of grain and other victuals; but made to repress the usurpations of the papal see, it was aimed solely at those nominations to vacant benefices, which were called provisions. The subject demonstrated the intendment of the law. Upon the same principle, if the enquiry be made, whether there exists an *agreement*, which the law will enforce, the subject matter limits the signification of the term " agreement," and gives it a new and peculiar meaning. The question does not regard the broad and comprehensive intendment of the term; nor its usual and popular acceptation; but the object of enquiry is, an agreement of a special nature, distinguished by a *legal* consideration, and enforcible in a court of justice. If the question be asked relative to a foreigner and pauper, in order to ascertain where he dwells, whether he is an inhabitant of a certain town, in which he has resided for years, without property or admission by authority, an affirmative answer is given to this enquiry without hesitation. But if the object of the enquiry be, to determine whether he is a *settled inhabitant*, to the same question is given a negative answer. A person speaks of inhabitants, and without a knowledge of the purpose in view, the term will be considered in its usual and most comprehensive sense, as synonymous with residents; but as soon as it appears, that *legal* inhabitants were intended, the word will be restrained and limited in its signification to those who possess this characteristic. The same observation is equally applicable to a law, which declares that agreements of a certain description shall be in writing. The mind, influenced by the popular and most familiar use of the term " agreement," considers the law as pointing to promises only; but if, from any source it appear, that the consideration was meant to be embraced, the peculiar and technical sense of a legal and sufficient contract, is seen to have been intended.

If I am right in my construction of the term in question, it settles the point under consideration. The word "agreement," if there be nothing to limit its meaning, regards *promises* only, and not their *consideration*.

It already has been remarked, that the law has no preamble, pointing out the mischief at which it was aimed. That parol testimony, in the establishment of certain contracts, had been

*Hartford,*
June,
1826.

Sage
*v.*
Wilcox.

productive of inconvenience, is perfectly obvious ; but whether the inconvenience existed in the proof of promises, or of their consideration, or of both, the law furnishes no light to determine. Proof of the consideration of a contract, in most cases, is not as liable to fraud and perjury, as the evidence of the promise is. Considerations most generally are palpable, the subject of sight and delivery; while promises are invisible, the operation of the mind only, communicated by speech. The detection of false testimony, in the former case, is more easy, than in the latter; and the temptation to deceive is much increased, when the evidence is conversant concerning language only. For the same reason, the mischiefs in the proof of considerations, if any existed, may have been greatly inferior to those, which attended the proof of promises. It must, however, be admitted, that the inconveniences, in both cases, may have been such as to demand a remedy ; or the legislature, perceiving a difference in this particular, may have believed, that if written proof was required of the promise to pay a debt, " which the person promising was under no moral or legal obligation to pay," the establishment of the consideration might safely be left to common law testimony. Hence, it is certain, that the nature of the inconvenience demanding redress, and the extent of the legislative remedy, are not ascertainable from the statute, for the want of a definite exhibition of the object, to which the law was directed.

Is there, then, no fact, from which we can perceive the mischief contemplated, and the bounds of the prescribed remedy ? Undoubtedly, there is such a fact ; and likewise, there are established principles of law, which conduct the mind to the most satisfactory result.

From the 29 *Car.* II. (*anno* 1676,) when the statute of frauds and perjuries was enacted, to the year 1804, when the first judicial decision was made, requiring the consideration, as well as the promise, to be in writing, a period of nearly one hundred and thirty years, no doubt existed, that a written promise alone was prescribed, and not a written consideration. By Lord Chancellor *Eldon,* it was said, that until the case of *Wain* v. *Warlters*, before alluded to, " we had always taken the law to be clear, that if a man agreed in writing to pay the debt of another, it was not necessary the consideration should appear on the face of the writing." 15 *Ves.* jun. 286. A similar observation was made by Ch. J. *Parker,* in *Packard* v. *Richardson* &

al. 17 *Mass. Rep.* 129.  Conformably with these opinions, <span style="float:right">*Hartford,*<br>June,<br>1826.</span> wherever the above law existed, in *England* and in the *United States,* so far as the point can be ascertained, the practical construction of it was uniform, regardless of the consideration, to commit the promise only to writing; and this during four successive generations of men.   The surprise excited in *Westminster-Hall,* at the determination of *Wain* v. *Warlters,* is a convincing proof, that the above-mentioned fact was perfectly understood, by the most learned lawyers.   For more than a century, I am not aware, a whisper was heard, that by committing the promise only to writing, the legal requisition was not observed.

*Sage*
*v.*
*Wilcox.*

To the fact believed to be established I subjoin the principle, *expositio contemporanea est fortissima in lege.*   The maxim rests on this unquestionable truth, that the persons living at the time when a law is enacted, are better able to ascertain the mischief at which it was aimed, and consequently, the legislative intent, than those persons are, who come into existence at a period remotely subsequent.   Hence, if the language in ancient charters has become obscure from antiquity, or the construction is doubtful, the constant and immemorial usage under the instrument, may be resorted to, for the purpose of explanation ; and in the case of an act of parliament, universal usage is a proper expositor, where the language is, in any respect, ambiguous.   *Rex* v. *Varlo, Cowp.* 248.   *Sheppard* v. *Gosnold, Vaugh.* 169.   *Rex* v. *Scott,* 3 *Term Rep.* 604.

I conclude, then, under this head of argument, that the words of the statute of frauds and perjuries, expounded by long and universal practice, leave no reasonable doubt regarding its construction.

I now come to the determinations of courts; and I begin with the celebrated case of *Wain* v. *Warlters,* 5 *East* 10.   A promise to pay the debt of another, was made in writing, but not the consideration.   The court adjudged, that the case was within the statute of frauds and perjuries.   In expressing his opinion, Lord *Ellenborough* first referred to the definition of an agreement by *Comyns,* (*Dig. tit.* Agreement. A. 1.) that there is *aggregatio mentium*—when two or more minds are united in a thing done, or to be done, or where there is a mutual assent to do a thing.   Every person of the least discrimination must perceive, that the united mind regards, not the consideration, but the object or purpose of the contract only.   It is the mutu-

*Hartford,*
June,
1826.

Sage
*v.*
Wilcox.

al assent to do an act, that forms the distinctive property of the definition, without reference to the legal inducement necessary to give the agreement validity.

His Lordship next observed, the agreement ought to be so certain and complete, that each party may have an action on it; and in support of this remark, referred to *Plowden's Commentaries. Plowd. 5. a.* 17. In the authority referred to, it is extremely obvious, that the popular meaning of the word *agreement* was not given, but merely what agreement will sustain an action. The case to which *Plowden* refers, is *Reniger* v. *Fogossa,* in which no point of law is determined, but judgment was rendered against *Reniger, by force of the privy seal;* and accordingly, an order was sent from the exchequer to surcease all process against *Fogossa.* The *case,* then, proves nothing. The reference, undoubtedly, was to the argument of the solicitor-general, which, certainly, is no authority; nor did even his argument bear upon the point now under discussion. The question arose upon the traverse of an agreement made with the collector of subsidy, to land certain goods, and the weight being ascertained, if any duty was unpaid, to make payment of it. The promise was proved; but as there was no consideration for it, the solicitor-general insisted, that *in law* it did not support the agreement relied on. From this short statement of the case, it appears, that the enquiry had no relation to the popular meaning of the word *agreement,* but to its peculiar signification, when pleaded by way of defence, for not having paid the duty of impost.

A case from *Dyer* 336. *b.* is next cited (*Calthorpe's* case,) which, according to the report, was argued "at the bar, *pro et contra, but not at the bench.*" No opinion was expressed by the court. An undecided case furnishes neither light nor authority.

The meaning of the term *agreement,* is next discussed. "In all cases," said Lord *Ellenborough,* "where by long habitual construction, the words of a statute have not received a peculiar interpretation, I am always inclined to give them their natural, ordinary signification. The clause in question in the statute of frauds has the word *agreement;* and the question is, whether that word is to be understood in the loose, incorrect sense, in which it may sometimes be used, as synonymous to *promise* or *undertaking,* or in its more proper and correct sense, as signifying a mutual contract, on consideration, between two

or more parties. The latter appears to me to be the *legal* construction of the word." Notwithstanding the great deference I entertain for the opinions of the learned and able judge above-named, there is nothing in his remarks satisfactory to my mind. The ordinary signification of the word *agreement* he professes to give, but he has not given it; and as to the "more proper and correct sense," that is the most proper and most correct, which expresses the meaning of the person using it. On this subject, there is but one acknowledged principle, and that is, what signification is stamped on a term by usage. *Usus est jus et norma loquendi.* It is usage that teaches men how to speak, and how to be understood; and I am not aware of any usage, that incorporates an agreement and its consideration in the former term, except where the word is employed technically to indicate an actionable contract. It would seem as if, unconsciously, his Lordship had first fixed in his mind the technical sense of the term *agreement*, and then had brought the words of the statute to this test. But the opposite is the correct course. The sense must be derived from the meaning of the word, instead of moulding the term, by a preconceived intendment of its sense. This, and this only, is interpretation.

The object of the law, and that it was to suppress fraud and perjury in the consideration of an agreement, as well as in the promise, is glanced at; but what the object was, is no otherwise established, than by the cases in *Plowden* and *Dyer* before-mentioned, and commented on, and by the brief dissertation recited on the meaning of the word *agreement*.

This case excited no little surprise in *Westminster-Hall;* and has been doubted, by the soundest lawyers and ablest judges. *Norris* v. *Stacey, Holt's N. P. Rep.* 153. Ex parte *Minet,* 14 *Ves.* jun. 190. Ex parte *Garden,* 15 *Ves.* jun. 286. As late as the year 1818, in *Goodman* v. *Chase,* 1 *Barn. & Ald.* 301. the question under discussion was raised, and by Lord *Ellenborough* it was said : " It would be very desirable to have a fuller examination made into the decissions on the other side of the Hall, where these cases more commonly occur than here." From this expression it may not unfairly be inferred, that the mind of his Lordship was not conclusively settled on the subject of discussion.

In the case of *Egerton* v. *Mathews* & al. 6 *East* 307. it became necessary to fix the meaning of the term *bargain,* in the 17th section of the statute of frauds; and, with Lord *Ellen-*

Hartford,
June,
1826.

Sage
v.
Wilcox.

*borough* at their head, the court determined, that this word was not coextensive with *agreement*, and that the consideration of the contract need not be in writing. To this opinion I cannot accede. The word *bargain* is equivalent to the expression *mutual agreement;* and if I were disposed to make a diversity of signification between the two words under consideration, I should be inclined to say, that the term *bargain* more prominently brings into view the mutuality of contract between parties, than the word *agreement.* If the determination in *Egerton* v. *Mathews* was right, I am persuaded, that the decision in *Wain* v. *Warlters*, was wrong.

In the late case of *Saunders* v. *Wakefield,* 4 *Barn. & Ald.* 595. the doctrine in *Wain* v. *Warlters* was recognized, and the point probably is at rest in *Westminster-Hall.* On a particular examination of the last decision, nothing material is added to the argument of Lord *Ellenborough,* in the former case ; and I shall pass it by, without further comment.

On a review of the determinations in *Westminster-Hall,* I feel myself at liberty to say, that there is nothing in them so authoritative and convincing as to affect an unbiassed consideration of the question now under discussion.

On the authority of *Wain* v. *Warlters,* the supreme court in the state of *New-York,* in *Sears* v. *Brink,* 3 *Johns. Rep.* 210. made a similar determination. With a learned judge in a neighbouring state, (17 *Mass. Rep.* 137, 8.) I enterely concur in the opinion, that respect for the decisions in *Westminster-Hall,* habitually and wisely indulged, with a want of information, that the case then recently determined there, was doubted by the profession, most probably led to the determination of *Sears* v. *Brink.* The argument of counsel, without any superadded discussion, referred to the *English* decision ; and the determination of the court, very briefly expressed, was founded precisely on the same reasoning. At the time of this determination, Ch. J. *Kent* was a member of the court, and assented to it. But under the influence of that ceaseless enquiry, for which he has ever been highly distinguished, and of that regard for legal truth that never fluctuates, the same learned judge, in *Leonard* v. *Vredenburgh,* 8 *Johns. Rep.* 29. three years after the decision in *Sears* v. *Brink,* declared his dissatisfaction with the determination in the latter case.

In *Packard* v. *Richardson,* 17 *Mass. Rep.* 122. it was decided, by the supreme judicial court in *Massachusetts,* that a promise

in writing to pay the debt of another, is a compliance with the statute of frauds, without any recital in writing of the consideration, on which the promise is founded. The very learned and elaborate opinion of Ch. J. *Parker* establishes the point of this decision beyond all reasonable controversy.

Whether the contract proved supports the one averred in the plaintiff's declaration, is the only remaining enquiry.

The declaration is founded on an *absolute* promise to pay the money in question with interest, at the expiration of a year. The promissory note before-mentioned was indorsed in the following words: "I guaranty the payment of the within note one year from the date." It is most obvious, that the promise is not absolute, but conditional. It is not a promise to *pay*, but to *guaranty* the payment of a note; the contract being to this effect—that the payment shall be made, by the maker, or on reasonable notice of default of payment, the assurer will be personally responsible. Contracts of guaranty, like all other commercial contracts, are to be construed liberally, in furtherance of the intention of the parties; but they must not be extended beyond the reasonable interpretation of the terms, in which they are expressed. This would be to annul the language of the person promising, and expunge from consideration those signs of intention, on which both parties have relied, as the evidence of their meaning. A promise to pay a sum of money, is an agreement to perform an act, in a manner the most absolute and unqualified. But a stipulation to assume the payment of another person's note, necessarily implies a condition, which the nature of the case renders perfectly intelligible. The promise is merely this; if the maker of the note does not pay you, according to his engagement, which presupposes an unsuccessful demand of payment, and notice of such demand, then I will pay you. This is the contract always assumed, by the indorser of a negotiable note, to whom the same is payable. Had the indorsement been in blank, except only a dispensation from suit against the maker, the construction of the contract would have been the same it now is. It is this dispensation from the bringing an action against the maker, that fixes the exposition of the engagement. Without this, were the indorsement in blank, it would only assume the responsibility of the maker, on suit. But his ability to pay, cannot avail the indorser in blank, if the creditor is not obliged to institute an action against him, precedent to the breach of contract. The nature

*Hartford,*
*June,*
*1826.*

*Sage*
*v.*
*Wilcox.*

of the case indicates, as well as the word employed, that the payment, at the expiration of a year, was the turning point, on which the guaranty was suspended. Had the indorsement stipulated, as the one in *Williams* v. *Granger,* 4 *Day* 444. did, not the ability of the maker only, but the advancement of the money on a day prefixed, the contract would have been absolute.

Between the averment in the plaintiff's declaration and the proof there is a manifest variance ; and for this cause, I would grant a new trial.

BRAINARD, J. was of the same opinion.

PETERS, J. I concur in the opinion of the Chief Justice, that a promise to pay the debt of another, without a new consideration, is void ; and that where the promise only is in writing, the consideration may be proved by parol. A contrary doctrine first received the sanction of a court, in *Wain* v. *Warlters,* 5 *East* 10. when the learned judges of the *King's Bench* discovered a new meaning in a statute, which had been the constant subject of judicial investigation for more than a century, and seems likely to continue so " ad *Græcas Kalendas.*" This case has been doubted, denied and sanctioned, in *England* and *America ;* but it has never been recognized as law in this state. It has been denied on the circuit ; and it was expressly overruled, by this Court, in *Beckwith* v. *Angell,* in 1823, when I had the misfortune to differ in opinion with the Chief Justice, which always leads me to doubt the correctness of my own. This case has not been reported ; but the Reporter is not in fault. The authorities relative to this point are so familiar to the profession, that I dismiss it with a few references only. *Goodman v. Chase,* 1 *Barn. & Ald.* 297. Ex parte *Minet,* 14 *Ves.* jun. 190. *Saunders* v. *Wakefield,* 4 *Barn. & Ald.* 595. *Packard* v. *Richardson,* 17 *Mass. Rep.* 122. *Sears* v. *Brink* & al. 3 *Johns. Rep.* 210. *Leonard* v. *Vredenburgh,* 8 *Johns. Rep.* 29. 1 *Swift's Dig.* 237.

The contract alleged is an *absolute* promise to pay ; but the contract proved is said to be *conditional.* The words are—" I hereby guaranty the payment of the within note, one year from this date, whether a suit is brought against the signer, or not." A guaranty, *ex vi termini,* imports an absolute engagement. In *Upham* v. *Prince,* 12 *Mass. Rep.* 14. "I guaranty payment of

this note within six months," was holden to be a promise that the note should be paid, at all events, within six months. In *Allen* v. *Rightmere,* 20 *Johns. Rep.* 365. the stipulation was, " For value received, I sell, assign and guaranty the payment of this note to *J. Allen,* or bearer." The supreme court of *New-York* decided, that this was an absolute engagement that the maker should pay the note when due, or that the defendant would pay it himself; and that demand and notice were not necessary. The word " guaranty" had previously received the same construction in *Campbell* v. *Butler,* 14 *Johns. Rep.* 349. and in *Mason* v. *Pritchard,* 12 *East,* 227.

*Hartford,*
*June,*
*1826.*

Sage
*v.*
Wilcox.

It is said, that there is a *variance* between the consideration stated and the consideration proved. The consideration stated is, that the plaintiff would forbear and give time of payment for one year; the consideration proved is, that the plaintiff would wait a year for his money. At any rate, this point was expressly submitted to the jury, and found in favour of the plaintiff; and if imperfectly stated in the declaration, it is cured by verdict, and is no cause for a new trial.

LANMAN, J. was of the same opinion.

DAGGETT, J. having been of counsel in the cause, gave no opinion.

New trial to be granted.