## N. Y. SUPERIOR COURT.

### JAMES SPEYERS, agt. EDWARD LAMBERT.

In 1863, the legislature (*Sess. L.* 1863, *Ch.* 464, § 2) amended the *statute of frauds*, so that that section reads as follows: "In the following cases, every agreement shall be void unless such agreement or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith.

1. Every agreement that by its terms is not to be performed within one year from the making thereof.
2. Every special promise to answer for the debt, default or miscarriage of another person.
3. Every agreement, promise or undertaking, made upon consideration of marriage, except a mutual promise to marry.

The former statute of which the above is an amendment, had the words, "expressing the consideration," after the words, memorandum thereof, in said second section.

*Held,* that the legislature thus changed the statute, with the express intention that the requirement, that the *consideration be expressed* in every agreement should thereafter no longer be insisted on *in any manner.*

*Held* also, that in the face of this legislative intent sufficiently expressed, the judicial interpretation of the law, as applied in some cases to the law of 1813, in conformity with the English doctrine must cease, as inconsistent therewith and totally repugnant thereto.

Consequently, an agreement as follows: "J. S. Esqr. The house you have rented to A. B. M., I agree to hold myself responsible for the payment of the monthly rent—say 400 per month. Yours respectfully, E. L."

*Held* valid, although it might not be considered binding as an original undertaking.

*General Term, May,* 1869.

*Before* BARBOUR, *Ch.* J., FREEDMAN *and* FITHIAN, *JJ.*

THIS case come before the courts upon the application of the plaintiff for judgment upon the verdict of $1,683,33 directed upon the trial of this action in favor of the plaintiff, subject to the opinion of the court at general term.

DAVID MCADAM, *attorney for plaintiff.*

HINSDALE and PATTERSON, *attorneys for defendant.*

*By the court,* FREEDMAN, J. The action is brought against the defendant as surety for one Mrs. Marshall, a tenant of

the plaintiff. The evidence shows clearly, that before renting the premises, the plaintiff required security for the rent; Mrs. Marshall proposed the name of the defendant, a lease was drawn up, which bears date April 6, 1867, and which, it must be assumed, as the evidence stands, was signed and executed by her on that day; the plaintiff, however, before executing it on his part, called upon the defendant in relation to the security, and the defendant thereupon, in the presence of the plaintiff, wrote and executed an agreement in writing and delivered the same to the plaintiff, as follows:

"New York, April 11, 1867.

"Jas. Speyers, Esq.:

"*Dear Sir*—The house you have rented to Mrs. A. B. Marshall, I agree herewith to hold myself responsible for the payment of the monthly rent, say $400 per month.

"Yours respectfully,

"Edward Lambert."

After the receipt of this instrument the plaintiff signed the lease and directed the same to be delivered to Mrs. Marshall, and on the first of May following Mrs. Marshal went into occupation of the premises under said lease. The defendant paid the first month's rent, and when the agreement was first made he stated to the plaintiff that he had the rent for six months in his hands. The rent sued for, accrued during the first six months of the tenant's term, to wit: from June 1, 1867, to October 1, 1867, for which amount, together with interest, the learned justice presiding at the trial directed a verdict for the plaintiff, subject to the opinion of the court at general term.

The defendant insists, however, that judgment should be ordered for him as in case of non-suit, because the instrument sued upon is void by the statute of frauds, for the reason that it does not express upon its face a consideration. He claims that this is necessary, notwithstanding this requirement does no longer exist in express terms since the

passage of chapter 464 of the laws of 1863; that the statute, as it was framed by the revisers and adopted by the legislature (3 *R. S., part* I, *chap.* 7, *title* 1, *section* 2, *subd.* 2), was itself an amendment of the so-called statute of frauds of 1813 (2 *Rev. Laws* 1813, *chap.* 3, *p.* 78, *but properly the act of* 1787), which was identical with the statute as it stands since the amendment of 1863; that therefore the amendment of 1863 merely re-established the rule of law as it existed before the Revised Statutes; that section 11 of the act of 1813 was literally the same as section 4 of the original statute of 29 Car., 2, chap. 3, from which our law was taken; that therefore the statutes of 1863 and 1813, and the English statute, being with reference to this point, in all respects similar, must be construed together; that the principles of interpretation, which were at any time applied to one of these acts, attach to the others, and that inasmuch as it was settled law under the English statute and under section 11 of the act of 1813, now substantially revived, that in order to sustain an action upon an agreement, of guaranty of the debt, &c., of another, the consideration must appear in the writing, for the reason that the consideration is a necessary and integral part of the agreement, without which a valid contract cannot be made, the same rule applies to the instrument forming the basis of this action.

The defendant therefore wholly rests his case upon the assumption that such was the settled law prior to 1830 in the absence of all statutory requirements to this effect. The first case in which this proposition was laid down was *Wain* agt. *Warlters* (5 *East*, 10), decided in the Queen's Bench, in 1804, in which the defendant had promised in writing to pay the debt of another person, *which was past due.* Although the decision of this case was several times disapproved by Lord ELDON, and particularly in *Gardom* (15 *Ves.*, 286), it was never overruled, and afterwards the same point being directly presented to the judges of the Queen's

Bench it was unanimously affirmed in *Saunders* agt. *Wake-field* (4 *Barn. and Ald.*, 595), and from that time the doctrine of *Wain* agt. *Warlters* appears to have been admitted as, beyond question, the English law upon this point.     In the United States the same question has occasioned a more marked conflict of judicial opinion than any other arising under the statute of frauds.     Of those states where the word "agreement" is retained in the clause requiring the memorandum, the doctrine of *Wain* agt. *Warlters* is repudiated in Maine (*Levy* agt. *Merrill*, 4 *Greenl.*, 189; *Gillighan* agt. *Boardman*, 29 *Maine* [16 *Shep.*, 81]; *Vermont* (*Smith* agt. *Ide*, 3 *Verm. R.*, 299; *Patchin* agt. *Swift*, 21 *id.*, 297); *Connecticut* (*Sage* agt. *Wilcox*, 6 *Conn. R.*, 81); *Massachusetts* (*Packard* agt. *Richardson*, 17 *Mass. R.*, 122, *and to remove all uncertainty the Revised Statutes of Massachusetts have since expressly provided that the consideration need not appear*); New Jersey (*Buckley* agt. *Beardslee*, 2 *South.*, 572); *North Carolina* (*Miller* agt. *Irvine*, 1 *Dev. and Bat.*, 103; *Ashford* agt. *Robinson*, 8 *Ired.*, 114), Ohio (*Reed* agt. *Evans*, 17 *Ohio R.*, 128); *and Missouri* (*Bean* agt. *Valle*, 20 *Mo. R.*, 103; *Halsa* agt. *Halsa*, 8 *id.*, 305); but it has received the sanction of the courts of New Hampshire, Georgia, Michigan and Wisconsin.     In Maryland the question does not seem to have been finally disposed of (*see Brooks* agt. *Dent*, 1 *Md. Ch. Dec.*, 530); in South Carolina, in which the English doctrine had been approved (*in Stephens* agt. *Winn*, 2 *Nott and McC.*, 372, *note a*), it was afterwards treated as an open question (*in Lecat* agt. *Tavel*, 3 *McCord*, 158), and in Indiana the tendency of the courts to adopt the English doctrine was checked by the legislature by the incorporation of a provision into the present Revised Statutes to the effect that the consideration may be proved by parol. In Louisiana the civil law prevails, and by that law no consideration is necessary to be stated (*Ringgold* agt. *Newkirk*, 3 *Ark.*, 97).

In the state of New York the question also gave rise to a variety of opinions, and with all due respect to the expres-

sions of learned and distinguished judges, to the effect that the English doctrine became the law of this state, I cannot subscribe to this broad statement.

The construction given in *Wain* agt. *Warlters*, to the term "agreement," in the English statute, was adopted by the supreme court of the state of New, in 1808, in *Sears* agt. *Brink*, (3 *Johns. R.*, 210), and followed in *Kerr* agt. *Shaw*, (13 *Johns.*, 236), decided in 1816. In *Livingston* agt. *Tremper*, (4 *Johns.*, 416), the decision in *Sears* agt. *Brink*, was qualified so as not to include contracts under seal, upon the ground that the statute of frauds was not meant to alter the common law rule in regard to such contracts, that at common law any promise under seal was valid, and that a seal imports a consideration. In *Leonard* agt. *Vredenburgh*, (8 *Johns.*, 23), the supreme court awarded a new trial, upon the ground that the testimony offered on the trial as to the consideration was rejected, for the reason that the consideration for the promise was not stated in the writing produced. KENT, Ch. J., in delivering the opinion of the court, says: "the case appeared to me then to be governed by the decision in *Wain* agt. *Warlters*, which was recognized by this court in *Sears* agt. *Brink*; but, upon better reflection, I now think that the plaintiff ought to have recovered upon that contract."

In *Bailey* agt. *Freeman*, (11 *Johns.*, 223), PLATT, J., in delivering the opinion of the court, approved of the decision in *Leonard* agt. *Vredenburgh*, (*supra*), and held that where the credit is originally given to the defendant as surety, it is unnecessary to show a separate consideration for the promise of the defendant; that where the principal contract and the guaranty were simultaneous, the consideration of the former supports the latter, that the consideration may be shown by parol proof in such case, and intimated that the doctrine laid down in *Wain* agt. *Warlters*, should be confined to promises to pay an independent *previously existing* debt of

another person, and should not be extended to original collateral agreements.

The case of *Nelson* agt. *Dubois*, (13 *Johns.*, 175), is to the same effect. The opinion of the court was delivered by justice SPENCER, while justice VAN NESS, who had delivered the opinion of the court in *Sears* agt. *Brink*, (*supra*), dissented.

In *Rogers* agt. *Kneeland*, (10 *Wend.*, 251, 252), justice NELSON, in delivering the opinion of the court, not finding it necessary to disapprove of *Sears* agt. *Brink*, and assuming it to have been followed in other cases, which I have shown has not been the fact, held that the consideration may be implied or inferred upon the general principle applicable to all instruments or agreements, that whatever may be fairly implied from the terms or language of an instrument is in judgment of law contained in it. This decision was subsequently affirmed by the court of errors in 1834 (13 *Wend.*, 114), where it was held, however, that the object of the statute was to reach every case of mere suretyship, whether the agreement of the surety was collateral, to a *previous promise* or liability on the part of the principal debtor, or only collateral to a *promise* or *agreement made at the same time* with the promise of the surety to indemnify against a future default or liability of such principal debtor, and that where the whole credit is not given to the person who comes in to answer for another, the promise is collateral. The chancellor, in this opinion, regretted that the courts had felt themselves bound to give a construction to the statute, by which it was made, in many cases, to operate as a fraud on those who have acted upon the faith of a written promise of a third person, but which, unfortunately, had no sufficient consideration actually appearing upon the face of the writing; and in noticing the amendment of the statute, by the revision of 1830, the chancellor intimated that it was a question whether the legislature has not gone still further in the Revised Statutes, and inadvertently adopted provis-

ions which will include agreements *under seal*, as well as those which are not, contrary to the decision of the supreme court in *Livingston* agt. *Tremper*, (*supra*).

But even in England, it was subsequently to the decision in *Wain* agt. *Warlters*, held not to be necessary that the consideration should be formally and precisely expressed in the memorandum, but that the same might be implied or inferred from the language of the instrument. This led to the remark of TINDALL, Ch. J., "That if by fair inference we can find that, that is sufficient—if we can, as it were, *spell it out* from the agreement." This practice seems to have been adopted in this state to some extent in disposing of cases presenting no features by which they could be distinguished from *Wain* agt. *Warlters*; but it was disapproved by the revisers and the legislature, who thought that it was improper for the courts to find out the consideration of an agreement by inferring or implying or spelling out the consideration, or by making it out by argument or conjecture; and it was enacted by the legislature in the adoption of the Revised Statutes, that the agreement should *express* the consideration. This remained the law of the state for over thirty years, but the question what cases did or did not come within this requirement, and the question as to the sufficiency of the expression of the consideration in each individual case, gave rise to much additional litigation, and produced a still greater conflict of opinion than had previously existed, and the legislature in 1863 saw fit to again strike out the provision of the statute which required that the consideration should be expressed in the instrument. The defendant therefore insists that this amounts to a restoration of the act of 1813, and that the restoration carries with it all the results of the judicial interpretation put upon that act. If this be correct, we are at liberty to spell out the consideration from the defendant's agreement, and I think it could be done (*see Dunning* agt. *Roberts*, 35 *Barb.*, 463). But I do not think it necessarily follows that,

because the legislature, in 1863, made the law read, as it once read in 1813, that a judicial interpretation then applied without any statutory authority, should be again put in force in spite of a legislative declaration to the contrary. The case of *Ely* agt. *Holton*, (15 *N. Y.*, 598), does not go to this extent. The effect of the amendment of 1863 must be construed agreeably to the intention of the legislature which enacted it; to hold that the legislature, in striking from the statute the requirement that the consideration must be expressed in the agreement mentioned in the statute, nevertheless intended to enact that the courts might still continue to enact and enforce this requirement, involves a palpable absurdity, and no construction or interpretation should ever be put upon any expression of the legislative will which leads to such a result.

On the contrary, it is fair to assume, that in view of the fact that many of the states had repudiated the doctrine of *Wain* agt. *Warlters* from the start; that in others, where it had been followed to some extent, it was either considerably modified by the courts, and in the course of time restricted to a small class of cases, or entirely abrogated by statute; that even the courts of England found themselves compelled to modify and refine it by degrees; that after an attempt and trial for more than thirty years to enforce it in this state by express statutory enactment, it was found to do more harm than good inasmuch as it operated as a fraud on the merchant, the farmer, the mechanic and the laborer, who acted upon the faith of the written promise of a third person, but who in most cases found it very difficult to state the real consideration of the collateral promise in legal and technical form, so as to make a valid agreement; that therefore, in this age of great and rapid commercial progress the further requirement of a compliance with a technical rule of law not prescribed by nor observed in other states, the enforcement of which had proved an endless source of trouble, annoyance and injustice, without yielding in a correspond-

ing degree the benefits expected to flow from it, namely, the prevention of crime of perjury, was inconsistent with the true commercial interests of the great state of New York, with its rapidly increasing population, composed in part of valuable foreign elements. It is fair to assume, I repeat, that in view of all these considerations, the legislature changed the statute in 1863, with the express intention that the requirement, that the consideration be expressed in every agreement, should thereafter no longer be insisted on in any manner, I can arrive at no other conclusion; and whoever will undertake the task of reading and studying among other cases the decisions in *Brewster* agt. *Silence*, (4 *Selden*, 207), followed in *Glen Cove Ins. Co.* agt. *Harrold*, (20 *Barb.*, 298), and in *Draper* agt. *Snow*, (20 *N.Y.*, 331), and on the other hand the case of the *Union Bank* agt. *Coster's executors*, (3 *Comst.*, 203), the controlling principle of which decision was necessarily involved and reaffirmed and approved in *Gates* agt. *McKee* (3 *Kern.*, 232), and again in *Church* agt. *Brown*, (21 *N.Y.*, 315), and then notice the frank admission of chief justice COMSTOCK, in the last-named case, that the decision of the case of *Brewster* agt. *Silence*, which he had followed, with his associates, in *Draper* agt. *Snow*, (20 *N.Y.*, 331), was erroneous, and thereafter he should be prepared to uphold the contracts and dealings of men belonging to the class which are condemned in the decision referred to : whoever, I say, will undertake that task, will, in all probability, arrive at the same conclusion to which I have arrived, as regards the reasons which induced the legislature, among other things, to change the statute in 1863. It is true, the legislature might have been more explicit, and enacted, in the words of the Massachusetts statute, that "That the consideration of any such promise, contract or agreement, need not be set forth or expressed in the writing, signed by the party to be charged therewith, but may be proved by any other legal evidence," or the words of the Indiana statute, which is nearly similar to that of Massachussetts ; but, al-

though this has not been done, I think the legislature of this state has been sufficiently explicit, under all the circumstances, in making known its determination to enact the same rule. In the face of this legislative intent sufficiently expressed, the judicial interpretation of the law, as applied in some cases to the law of 1813, in conformity with the English doctrine, must cease, as inconsistent therewith and totally repugnant thereto.

I have no doubt that since 1863, securities to an immense amount have been taken in business throughout this state, in reliance upon the idea that a compliance with the old rule is no longer necessary; the interpretation contended for by the defendant would place all the contracts entered into in respect to these securities in jeopardy, and would thus greatly increase the uncertainty of the law, which is now proverbial.

In conclusion I refer to the case of *Thompson* agt. *Blanchard*, (3 *Comst.*, 337), in which it was held, by the court of appeals, that an undertaking required by statute to be entered into by sureties, in order to give a right of appeal, is valid if it contain the necessary stipulations, although it does not express a consideration, and is not under seal; and that if it could be said that such an instrument would not be obligatory by the statute of frauds, the very obvious answer is, that the legislature of 1848 had the same power to restore the common law, as to this class of securities, that their predecessors had to abolish it.

It may be a question whether, under the peculiar circumstances of this case, the defendant is not liable upon his agreement as an original undertaking, but under the views already expressed it is unnecessary to discuss this point.

Judgment absolute should be ordered for the plaintiff on the verdict, with costs.

BARBOUR, Ch. J.—I concur.

FITHIAN, J.—I concur.