## BRITTON v. ANGIER.

Under the statute, which provides that no action shall be brought to charge an executor or administrator upon a special promise to answer damages out of his own estate, nor to charge any person upon a special promise to answer for the debt, default or miscarriage of another, unless the promise is in writing, &c., it is not necessary that the writing should state the consideration of the promise.

Where the promise to pay the debt of another is founded upon a new consideration distinct from and independent of the debt, and one which passes between the parties to the new contract, the case is not within the statute, and no writing is necessary to the validity of the promise.

ASSUMPSIT. The first count alleged that on the 10th of March, 1862, there was an unsatisfied judgment rendered in the Supreme Judicial Court in favor of one Esty against Robert Barnet, deceased, as administrator of the estate of Samuel Long, and the plaintiff, for $100, and another judgment in favor of one Williams against Robert Barnet as such administrator, for the other sum of $100, and then the defendant by a certain agreement in writing by him duly signed and delivered to the plaintiff agreed to clear and save the plaintiff from all liabilities in favor of or against said Samuel Long or his estate from any notes, mortgages and executions whatsoever, and the defendants though requested on the 7th day of October, 1865, refused to pay the said judgments, and the plaintiff was compelled to pay the same; yet the defendant refuses to repay the plaintiff the money so paid by him in discharge of the said judgments.

The second count set out the two judgments as in the first count, and alleged that the defendant on the 10th of August, 1862, in consideration that the plaintiff would execute and deliver to the defendant a deed of a certain piece of land in Alstead, promised the plaintiff as in the first count; and the plaintiff, relying on the promise, executed and delivered the deed to the defendant who accepted the same; alleging the breach as in the first count.

The third count was for $300, paid, laid out, and expended.

The plaintiff, on trial, produced the following writing:

"New Alstead, March the 10, 1862. Know all persons by these presents that I, Silas Angier, of Alstead, do agree to clear and save Levi Britton from all liabilities in favor or against Samuel Long or his estate, from any notes, mortgages, executions, whatsoever; I, Silas Angier being adm'r of said Long estate. SILAS ANGIER, Adm'r."

The defendant objected that on this evidence the action could not be maintained. The formal pleadings for the purposes of the case, were dispensed with, and the case reserved for the determination of the legal questions.

*Woodward & Wellington* for the plaintiff.

*Cushing* for the defendant.

The matter alleged in the declaration is the neglect or the refusal of the defendant to pay certain judgments against the plaintiff, and Barnet, a former administrator of the estate of Long, the defendant's intestate. It is claimed, therefore, that the agreement offered in evidence is a promise or undertaking of the defendant. an administrator, to answer in damages out of his own estate for a debt of his intestate and also to pay the debt of that intestate. Such an agreement, to be valid, must be in writing and the consideration must appear in the writing. The writing produced in evidence neither contains any express consideration, nor anything from which a consideration can be implied. No action, therefore, can be maintained upon it. It is well settled that the consideration must appear in the writing and cannot be shown by parol. *Neelson* v. *Sanborne*, 2 N. H. 414; *Simonds* v. *Steele*, 36 N. H. 81, 82; *Hodgkins* v. *Bond*, 1 N. H. 284.

The first count in the declaration is bad because no consideration is alleged in it.

The second count cannot be maintained because the consideration alleged does not appear from the writing.

PERLEY, C. J. Two questions have been raised on this case:

1. Is the writing produced by the plaintiff a compliance with the statute, which requires a promise to answer for the debt of another, and a promise by an executor or administrator to pay a debt out of his own estate, to be in writing?

2. On the facts alleged in the second count of the declaration, is this case within the statute?

The objection made to the writing is that it does not express the consideration of the promise. The statute requires such a *promise* to be in writing; and the question on this part of the case is whether in construction the consideration of the promise must be stated in the writing.

In *Wain* v. *Warlters*, 5 East 10, it was decided in 1804 that the writing, to be sufficient under the English statute, must contain the consideration of an agreement to answer for the debt of another. That case turned upon the construction to be given the word *agreement* used in the statute, which it was held, being a term of the law, must be understood in its technical legal meaning, and in that sense would imply and include the consideration. This decision is said to have created no little surprise in Westminster Hall; and it was for some time afterwards criticised and doubted in England. *Ex Parte Minet*, 14 Ves. 190; *Ex Parte Gardom*, 15 Ves. 256; *Morris* v. *Stacy*, Holt's N. P. 153, and the reporter's note. But it appears to be now received there as the established construction of the statute. *Saunders* v. *Wakefield*, 4 B. & Ald. 595.

In some of the United States the provisions of the English statute have been copied or followed without material variation. Such I understand to be the case in New York; and in that State the English construction has been adopted. *Sears* v. *Brink*, 3 Johns. R. 210; *De Wolf* v. *Rabaud*, 1 Pet. 476. And from a note to 2 Nott & M'Cord 372, it would seem that the law is understood to be the same

in South Carolina.   I do not find that the English rule of construction
has been adopted  in any other of the United States, even where the
statute corresponded with the English, and required that the construc-
tion should turn on the legal meaning of the word *agreement* alone.

In Massachusetts, Maine, Connecticut, Texas, Ohio, Alabama, and
Florida, the statutes on this subject, as I understand them, agree in
substance with the English ; and in those States it has been held that
the writing need not state the consideration ; *Pickard* v. *Richardson*,
17 Mass. 122 ; *Levy* v. *Merrill*, 4 Greenl. 180 ; *Sage* v. *Wilcox*, 6
Conn. 84 ; *Reed* v. *Evans*, 17 Ohio 128 ; *Dorman* v. *Bigelow*, 1
Branch 281 ; *Thompson* v. *Hall*, 16 Ala. 204 ; and in Maryland and
New Jersey, where the statutes conform to the English, there are
strong intimations of the courts that the English rule would be reject-
ed, though in those States I do not find that the point has been directly
decided.   *Brooks* v. *Dent*, 1 Maryland Ch. Dec. 523, 530 ; *Laing* v.
*Lee*, 1 Spencer 337.   The weight of American authority would seem
to preponderate heavily against the rule that requires the writing to con-
tain a statement of the consideration upon which the agreement is
founded, even where, as in the English statute, the construction de-
pends on the legal meaning of the word *agreement*.

But the language of our statute differs materially from that of the
English.   The English statute, 29 Car. 2, ch. 3, sec. 4, avoids " any
special promise to answer for the debt, default or miscarriage of another,
unless the *agreement*, upon which the action shall be brought, or some
memorandum or note thereof, shall be in writing and signed by the
party to be charged therewith."   Under that statute it is upon the agree-
ment that the action is to be brought and therefore the *agreement* is re-
quired to be in writing.   Section 8 of chapter 180, Revised Statutes of
New Hampshire, under which this question arises, is in the terms fol-
lowing :   " No action shall be brought, in the following cases :

*First*.   To charge any executor or administrator upon any special
promise to answer damages out of his own estate.

*Second*.   To charge any person upon any special promise to answer
for the debt, default or miscarriage of another person.

*Third*.   To charge any person upon any agreement made upon con-
sideration of marriage.

*Fourth*.   To charge any person upon any agreement that is not to
be performed within one year from the time of making it :

Unless such *promise or agreement*, or some memorandum or note
thereof, is in writing, and signed by the party to be charged therewith,
or by some person by him thereunto lawfully authorized."

We must understand, either that our statute in speaking of the pre-
ceding *promise or agreement* meant that the promise or agreement, as
the case might be, should be in writing ; that is to say, *reddendo
singula singulis*, that in the specified cases, where the statute speaks
of a *promise*, the promise  must be in writing, and in the other class,
where the word *agreement* is used, the agreement must be in writing ;
or the statute, in referring to the preceding provisions, must be under-
stood to use the words *promise* and *agreement* as equivalent expres-

sions applying alike to all the different cases before mentioned. If, in cases where the statute requires the *promise* to be in writing, as in undertakings to answer for the debt of another, the construction is to be on the meaning of the word *promise* alone, that word does not, either in a legal or popular sense, imply a consideration ; and if, on the other hand, the words *promise* and *agreement* are used in the statute indifferently and as of the same meaning, it is by no means consistent with such looseness in the use of language to suppose that the intention was to give one of the words a technical legal meaning not belonging to the other.

Accordingly where the word *promise* is introduced into the statute and coupled with the word *agreement*, as it is in our statute, it has been held in all cases, unless an exception is to be found in this State, that the writing, to be in compliance with the statute, need not contain a statement of the consideration. Kent, 3 Com. 86, says, " the decisions have all turned upon the force of the word *agreement*, and where by the statute the word *promise* has been introduced by requiring the *promise or agreement* to be in writing, as in Virginia, the construction has not been so strict."

The statute of Virginia would seem to be in this respect like ours, speaking of a *promise* in a certain class of cases, and of an *agreement* in another class, and concluding with the provision that no action shall be brought "unless the *promise or agreement*, on which such action shall be brought, or some memorandum or note thereof shall be in writing," &c. In *Violett* v. *Patten*, 5 Cranch 142, 151, Marshall, C. J., delivering the opinion of the court, says : " The argument on this point is founded on the idea that the statute of frauds in Virginia is copied literally from the statute of Charles 2. This is not the fact. The first section of the act of Virginia differs from the fourth section of the statute of Charles 2, in one essential respect. The statute of England enacts that no action shall be brought in the cases specified unless the *agreement*, on which such action shall be brought, or some memorandum or note thereof, shall be in writing. The Virginia act enacts that no action shall be brought in the specified cases unless the *promise or agreement* or some note or memorandum thereof shall be in writing. The reasoning of the judges in the cases, in which they have decided that the consideration ought to be in the writing, turns upon the word *agreement*, of which the consideration forms an integral part. This reasoning does not apply to the act of Virginia, in which the word *promise* is introduced." And it was held in *Violett* v. *Patten,* that under the statute of Virginia the writing need not state the consideration. The same construction was given to the statute of Virginia in *Coglin* v. *Henley*, 6 Leigh 85.

Of the three cases in this State, cited for the defendant, *Hodgkins* v. *Bond* would not seem to be at all in point. There the defendant signed his name in blank on the back of a note, and the question was whether the plaintiff might write a guaranty over it ; and nothing is said on the point whether the consideration of the undertaking should be in the writing. In *Neelson* v. *Sanborne*, 2 N. H. 414, the Chief Justice said

it was not necessary to decide whether the consideration must be stated in the writing, and the point was not decided. So in *Simons* v. *Steele*, 36 N. H. 81, 82, Fowler, J., evades the question, and says "admitting that the writing must contain the consideration," &c.

In *Underwood* v. *Campbell*, 14 N. H. 393, the question was as to the sufficiency of a writing as an agreement to convey land; and therefore the decision might not be regarded as directly in point for this case, where the undertaking is to answer for the debt of another; for a valid agreement to convey land would almost necessarily state the price or consideration on which the conveyance was to be made. But the distinction between a promise to answer for the debt of another and an agreement to convey land is not adverted to in *Underwood* v. *Campbell*, and the only authorities cited in that case were *Wain* v. *Warlters* and *Neelson* v. *Sanborne*, both cases where the question was upon the sufficiency of a writing to answer for the debt of another. Gilchrist, J, says : "The instrument referred to in this case cannot have the effect of an agreement to convey land because there is no consideration expressed in it. *Wain* v. *Warlters*, 5 East 10 ; *Neelson* v. *Sanborne*, 2 N. H. 413. And parol evidence is not admissible that the property advanced by the tenant, as set forth in the brief statement, formed the consideration of the instrument. This point is settled by the case *Wain* v. *Warlters* and the numerous decisions, which have been made in accordance with it." No other authorities are cited to this point and this is all that the court say upon it.

It is evident, admitting *Underwood* v. *Campbell* to be an authority in point, that the question was not very fully considered in that case. The subject is not much discussed ; and, though the case was decided as late as 1843, there is not so much as a passing notice of the cases in this country which had rejected the doctrine of *Wain* v. *Warlters*, and been decided long before ; such as *Packard* v. *Richardson*, 17 Mass. 122, in 1821 ; *Levy* v. *Merrill*, 4 Greenl. 180, in 1826, and *Sage* v. *Wilcox*, 6 Conn. 84, in 1826. And the important difference between our statute and the English is not so much as mentioned, though the case of *Violett* v. *Patten*, 5 Cranch 142, had been decided on the same distinction as early as 1809, and though the distinction was recognized and clearly stated in 3 Kent's Com. 86, edition of 1825, as is before cited.

This case of *Underwood* v. *Campbell* has not, we think, been generally regarded as a final and satisfactory settlement of the question in this State. It certainly was not treated as such in the later case of *Simons* v. *Steele* in 1858, where the judge who delivered the opinion of the court uses language implying more than a doubt of its correctness, saying : "Admitting that under our statute a promise or agreement to pay the debt of another should not only be in writing but the consideration also, we think the defendant's guaranty is valid."

Undertakings to answer for the debt or default of another grow out of an infinite variety of circumstances in the transaction of business, and are generally made by those who have little acquaintance with the rules of law as determined by the courts ; and in spite of decisions de-

fining the form in which writings to answer the statute should be made, many contracts honestly made are likely to be defeated, if it should be held, by a strictly technical construction of the statute, that the writing must contain a statement of the consideration of the promise or agreement ; for these writings are not like deeds and wills and other solemn acts, executed in one form, which when once settled will answer in all cases. If, therefore, requiring the consideration to be stated in the writing, under the statute, should appear to be a rule of superfluous strictness not necessary to accomplish the objects of the law, and depending on an artificial interpretation of the word *agreement* considered as a term of the law, notwithstanding what has been said and determined in our courts, we should feel quite at liberty to treat the question as still unsettled in this State. And we think if the writing states distinctly what the party signing it promises to do, there is no danger of such mischief as the statute was intended to prevent, in allowing parol evidence of the motive which induced him to make the written promise. And in construing the language of the statute, even if the word *agreement* is to be taken as the controlling term, we must resort to an artificial and unnatural interpretation of the word to reach the conclusion that a party, who promises in writing that he will do a thing, has not agreed to do it within the meaning of the act, if he does not in the writing express the consideration which induced him to make the promise. Then, if we consider the question on authority, we have found none out of this State, which, in the construction of a statute like ours, requires the consideration to be stated in the writing. On the whole we come to the conclusion that a promise or agreement in writing to answer for the debt or default of another need not under the statute of New Hampshire express the consideration.

Taking the facts to be as they are stated in the second count of the declaration, Robert Barnet had been administrator of Samuel Long's estate, and when the writing was made the defendant was administrator of that estate. Nathaniel Esty had recovered judgment against Barnet as such administrator and against the plaintiff in two suits, and the judgments remained unsatisfied. The estate, of which the defendant was administrator, and the plaintiff were liable on those judgments. It was then agreed that the plaintiff should give the defendant a deed of certain land, and the defendant, in consideration of the deed, should save the plaintiff harmless against the judgments. In pursuance of this agreement the defendant gave the plaintiff the writing stated in the case. On the case stated in this count of the declaration, the consideration of the agreement to save the plaintiff harmless against the judgments was the deed of the land, and the consideration passed between the parties to the agreement.

If the deed of the plaintiff to the defendant was the real and substantial consideration of the defendant's promise, the case is not within the statute. For though the original liability of the other party remains, and the promise is to do what the original party is still bound to perform, yet if the new promise is founded on a new consideration moving to the promisor, and not on a consideration growing out of the

original transaction, like forbearance to the debtor, the case is not with-
in the statute, and the promise need not be in writing.  *Allen* v.
*Thompson*, 10 N. H. 32 ; *Holmes* v. *Knight*, 10 N. H. 175 ; *Robin-
son* v. *Gilman*, 43 N. H. 485.  Authorities to the same effect are
very numerous in other jurisdictions.  *Williams* v. *Soper*, 3 Burr.
1886 ; *Castling* v. *Aubert*, 2 East 325 ; *Bamplin* v. *Paulin*, 4
Bing. 264 ; *Russell* v. *Babcock*, 14 Maine 138 ; *Town* v. *Northey*,
17 Maine 113 ; *Alger* v. *Scoville*, 1 Gray 391 ; *Cross* v. *Richard-
son*, 30 Vermont 641 ; *Mallory* v. *Gillet*, 21 N. Y. (7 Smith) 412 ;
*Reed* v. *Holcomb*, 31 Conn. 360.